UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RICHARD J. CRANE,

        Plaintiff,

v.

RODRIGUEZ, et al.,

        Defendants.

No.  2:15-cv-0208 TLN KJN P

ORDER AND

FINDINGS AND RECOMMENDATIONS

I.     Introduction

Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the court is the motion for summary judgment on behalf of defendants Barton, Davey, Probst, Robinette and Rodriguez.  (ECF No. 236.)  Also pending is the motion for summary judgment on behalf of defendant Weeks.  (ECF No. 240.)

For the reasons stated herein, the undersigned recommends that the summary judgment motion on behalf of defendants Barton, etc. be granted in part and denied in part, and defendant Weeks' summary judgment motion be denied.

II.    Procedural Background

On May 7, 2021, defendants Barton, Davey, Probst, Robinette and Rodriguez filed a summary judgment motion.  (ECF No. 236.)  On May 21, 2021, defendant Weeks filed a

1   summary judgment motion.  (ECF No. 240.)

2          Following multiple extensions of time, plaintiff filed the following pleadings in response

3   to defendants' summary judgment motions:  1) a response to the statement of undisputed facts

4   filed by defendants Barton, etc. (ECF No. 283); 2) a response to the statement of undisputed facts

5   filed by defendant Weeks (ECF No. 286); 3) an opposition to both summary judgment motions

6   (ECF No. 289); 4) a supplemental opposition (ECF No. 298); and 5) a declaration (ECF No. 300).

7          Defendants Barton, etc., filed a reply to plaintiff's oppositions.  (ECF No. 302.)

8   Defendant Weeks filed a reply to plaintiff's oppositions.  (ECF No. 311.)

9       III.      Legal Standards for Summary Judgment

10          Summary judgment is appropriate when it is demonstrated that the standard set forth in

11   Federal Rule of Civil Procedure 56 is met.  "The court shall grant summary judgment if the

12   movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

13   judgment as a matter of law." Fed. R. Civ. P. 56(a).[1]

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

18   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P.

19   56(c).)  "Where the nonmoving party bears the burden of proof at trial, the moving party need

20   only prove that there is an absence of evidence to support the non-moving party's case."  Nursing

21   Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376,

22   387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 Advisory

23   Committee Notes to 2010 Amendments (recognizing that "a party who does not have the trial

24   burden of production may rely on a showing that a party who does have the trial burden cannot

25   produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment

26

27   [1] Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10, 2010. However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule 56, "[t]he

28   standard for granting summary judgment remains unchanged."

should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at

255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

By notices issued on May 7 and 21, 2021 (ECF Nos. 236-1 & 240-1), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

IV.    Operative Complaint

This action proceeds on plaintiff's verified second amended complaint against defendants Davey, Rodriguez, Robinette, Barton, Probst and Weeks.  (ECF No. 16.)

Plaintiff alleges that on four occasions, between December 31, 2009, and March 1, 2013, defendants conspired to set him up for assault by inmates Washington, Smith, Dolihite, Parker and Williams in retaliation for plaintiff's litigation activities.  (Id. at 3-9.)  Plaintiff also alleges that defendants Robinette and Weeks used excessive force on March 1, 2013.  (Id. at 7-8.)

*February 5, 2010 Incident Involving Inmate Washington*

Plaintiff alleges that on December 31, 2009, defendants Barton and Probst told plaintiff that they were going to move plaintiff into inmate Washington's cell.  (Id. at 3.)  Plaintiff told them that he could not live with inmate Washington because they were enemies.  (Id.)  Defendant Barton responded, "I don't care, I'm going to kill you."  (Id.)  On or around December 31, 2009, plaintiff moved into inmate Washington's cell.  (Id.)  Plaintiff alleges that from December 31, 2009, through February 5, 2010, plaintiff repeatedly asked defendants Barton, Robinette and Probst to move him away from inmate Washington because inmate Washington made daily

4

1   threats to beat plaintiff.  (Id. at 4.)  Defendants laughed at plaintiff's requests.  (Id.)  Plaintiff

2   alleges that defendants Barton and Probst used inmate Washington to set plaintiff up for abuse

3   and eventual assault.  (Id.)

4          On February 5, 2010, plaintiff asked Correctional Officer Silva to move plaintiff away

5   from inmate Washington because of inmate Washington's constant threats to beat plaintiff.  (Id.)

6   Correctional Officer Silva told Correctional Officer Sanchez about what plaintiff had said.  (Id.)

7   Correctional Officer Sanchez questioned inmate Washington about threatening plaintiff while

8   plaintiff was at the law library.  (Id.)  When plaintiff returned to his cell, inmate Washington

9   asked plaintiff who he talked to?  (Id. at 5.)  Inmate Washington threatened plaintiff.  (Id.)

10  During dinner tray pick-up, plaintiff asked to be moved out of the cell.  (Id.)  Thereafter, inmate

11  Washington attacked plaintiff, breaking his nose and ribs.  (Id.)

12          *January 22, 2011 Incident Involving Inmate Smith*

13          In October 2010, defendant Robinette walked by plaintiff's cell and said, "I have a new

14  cellie for you!"  (Id.)  Prison officials moved inmate Smith into plaintiff's cell.  (Id. at 6.)  Inmate

15  Smith began threatening plaintiff.  (Id.)  Plaintiff asked defendant Rodriguez and Correctional

16  Officer Patton for a cell move away from inmate Smith.  (Id.)  Defendant Rodriguez and

17  Correctional Officer Patton denied plaintiff's request to move away from inmate Smith.  (Id.)

18          In January 2011, plaintiff asked defendant Rodriguez to move him out of the cell.  (Id.)

19  Defendant Rodriguez responded, "I'll drag you out of that cell and beat your ass and throw you

20  back in there."  (Id.)  On January 22, 2011, inmate Smith attacked plaintiff in the cell.  (Id.)

21          *January 16, 2013 Incident Involving Inmate Dolihite*

22          On January 16, 2013, as plaintiff entered "work change," defendant Probst said, "Watch

23  out for Crane."  (Id.)  Inside the GED class, inmate Dolihite stabbed plaintiff in the neck with a

24  pencil and punched and kicked plaintiff twenty times.  (Id. at 6-7.)  Inmate Dolihite was

25  criminally prosecuted for this assault.  (Id. at 7.)

26          *March 1, 2013 Incident Involving Inmates Parker and Williams*

27          Plaintiff was placed in administrative segregation ("ad seg") as a result of the January 16,

28  2013 assault by inmate Dolihite.  (Id.)  Upon his release from ad seg, plaintiff was set up to be

assaulted by two Black inmates, Parker and Williams.  (Id.)  Defendants Robinette and Weeks told inmates Parker and Williams to get ready to do the favor owed to them and that it is "Crane." (Id.)

On March 1, 2013, the yard announcer ordered plaintiff to report to the office to turn in his shoes.  (Id.)  Plaintiff went to the office to exchange his ad seg shoes for boots.  (Id. at 7-8.) As plaintiff put the boots on, defendant Robinette said, "You're going to need them."  (Id. at 8.)

Plaintiff began walking laps.  (Id.)  After walking a half lap, inmates Parker and Williams attacked plaintiff.  (Id.)  Plaintiff never met these inmates before.  (Id.)  The guards did not sound the alarm until plaintiff had been beaten for a long time.  (Id.)

Defendants Robinette and Weeks finally came running.  (Id.)  They ordered plaintiff to get down while inmates Parker and Williams remained standing.  (Id.)  Once plaintiff was on the ground, defendants Robinette and Weeks and other prison guards handcuffed plaintiff behind his back and smashed his face into the ground, dragged plaintiff's face across the ground, and hit plaintiff over the head with batons rendering plaintiff unconscious.  (Id.)

*Defendant Davey*

Plaintiff alleges that on September 25, 2012, defendant Davey was ordered to respond to a motion for a preliminary injunction filed in case 2:11-cv-663.  (Id. at 9.)  Plaintiff alleges that he served defendant Davey with affidavits by plaintiff regarding numerous in-cell murders and serious assaults occurring on the Sensitive Needs Yard where defendant Davey was the captain. (Id.)  Plaintiff alleges that Warden McDonald was forced to resign under pressure from the Inspector General after plaintiff and other prisoners testified on a tape recorder to Michael Maddox, Inspector General.  (Id.)

Plaintiff alleges that instead of ordering protection for plaintiff, defendant Davey sanctioned the January 16, 2013, and March 1, 2013 incidents in retaliation for plaintiff's legal activities.  (Id.)

*Calling Plaintiff a Snitch*

Plaintiff alleges that defendants Barton and Rodriguez called plaintiff a snitch.  (Id. at 5.) ////

*Plaintiff's Legal Claims*

As stated in the October 20, 2015 order screening the second amended complaint, plaintiff alleges that defendants Rodriguez, Robinette, Weeks, Barton and Probst violated the Eighth and First Amendments and conspired to violate plaintiff's civil rights.  (ECF No. 26 at 6.)  In particular, the undersigned construes the second amended complaint to allege the following claims:  1) failure-to-protect and retaliation against defendants Barton, Probst and Robinette based on the February 5, 2010 incident; 2) failure-to-protect and retaliation against defendants Robinette and Rodriguez based on the January 22, 2011 incident; 3) failure to protect and retaliation against defendant Probst based on the January 16, 2013 incident; 4) failure-to-protect, excessive force and retaliation against defendants Robinette and Weeks based on the March 1, 2013 incident; 5) failure-to-protect and retaliation against defendant Davey for sanctioning the January 16, 2013, and March 1, 2013 incidents; 6) Eighth Amendment and retaliation against defendants Barton and Rodriguez for allegedly calling plaintiff a snitch; and 7) a conspiracy claim against all defendants for allegedly conspiring with each other to violate plaintiff's constitutional rights based on his legal activities.

*Plaintiff's Exhibits*

Plaintiff's previously-submitted exhibits were ordered filed with his pleading.  (ECF No. 26 (ECF No. 16-1 (Exhibits).)

V.    Motion for Summary Judgment on Behalf of Defendants Barton, Davey, Probst, Robinette and Rodriguez

Defendants move for summary judgment on the following grounds:  1) plaintiff's claims regarding the February 5, 2010 incident are barred by the statute of limitations; 2) plaintiff failed to administratively exhaust his claims regarding the January 16, 2013 incident; and 3) defendants are entitled to summary judgment as to the merits of plaintiff's claims regarding the four incidents alleged in the second amended complaint.

////

////

////

A. <u>Are Plaintiff's Claims Regarding the February 5, 2010 Incident Barred by the Statute of Limitations?</u>

As discussed above, plaintiff alleges that defendants Barton, Probst and Robinette violated the Eighth Amendment by housing plaintiff with inmate Washington, who assaulted plaintiff on February 5, 2010.  Plaintiff also alleges that these defendants housed plaintiff with inmate Washington in retaliation for plaintiff's legal activities.  Plaintiff further alleges that these defendants engaged in a conspiracy with the other defendants to retaliate against plaintiff for his legal activities when they failed to protect plaintiff from inmate Washington, and this conspiracy included the other three incidents alleged in the second amended complaint.

Defendants argue that plaintiff's claims regarding the February 5, 2010 incident are barred by the statute of limitations.

For conspiracy claims arising under Sections 1983, the statute of limitations begins to run from "the last overt act alleged from which damage could have flowed."  <u>Zeleny v. Brown</u>, 2019 WL 3430734, at *2 (N.D. Cal. July 30, 2019) (quoting <u>Lambert v. Conrad</u>, 308 F.2d 571, 571 (9th Cir. 1962)).  "A plaintiff must allege a specific overt act occurring within the statutory period and cannot rest on a 'general allegation that the conspiracy continued to a date within the limitations period.'"  <u>Id.</u> (quoting <u>Lambert</u>, 308 F.2d at 571).

As discussed above, plaintiff alleges a conspiracy by defendants to retaliate against him for his legal activities beginning with the February 5, 2010 incident and ending with the March 1, 2013 incident.  Defendants do not argue that the March 1, 2013 incident is untimely.  For the reasons stated herein, the undersigned finds that plaintiff's claims regarding the February 5, 2010 incident are barred by the statute of limitations unless plaintiff can demonstrate that the incident was part of the alleged conspiracy.

For claims brought under 42 U.S.C. § 1983, the applicable statute of limitations is California's statute of limitations for personal injury actions.  <u>See</u> <u>Wallace v. Kato</u>, 549 U.S. 384, 387-88 (2007); <u>Jones v. Blanas</u>, 393 F.3d 918, 927 (9th Cir. 2004) ("[f]or actions under 42 U.S.C. § 1983, courts apply the forum state's statute of limitations for personal injury actions...").  In California, there is a two-year statute of limitations for personal injury actions such as § 1983

1   cases.  See Cal. Civ. Proc. Code § 335.1; Maldonado v. Harris, 370 F.3d 945, 954 (9th Cir. 2004).

2          State tolling statutes also apply to § 1983 actions.  See Hardin v. Straub, 490 U.S. 536,

3   543-44 (1998).  California Civil Procedure Code § 352.1(a) provides tolling of the statute of

4   limitations for two years when the plaintiff is, at the time the cause of action accrued, an inmate

5   serving less than a life sentence.  See Cal. Code. Civ. P. 352.1(a).  This tolling provision applies

6   to all inmates except those sentenced to life without the possibility of parole.  See Brooks v.

7   Mercy Hospital, 204 Cal. Rptr. 3d 289, 291-92 (Cal. App. 2016) (holding § 352.1(a) is applicable

8   to prisoners serving a sentence of life with the possibility of parole, but the statutory language

9   excludes those sentenced to life without the possibility of parole).  It is undisputed that plaintiff is

10  serving a sentence of less than life with the possibility of parole.  Therefore, plaintiff is entitled to

11  two years of statutory tolling pursuant to section 352.1(a).

12         Plaintiff had at least four years from February 5, 2010, to file a timely civil rights action

13  raising his claims challenging the February 5, 2010 incident not based on the alleged conspiracy,

14  i.e., two years pursuant to § 335.1 and two years pursuant to § 352.1(a).  Four years from

15  February 5, 2010, is February 5, 2014.  Plaintiff filed the original complaint on January 21,

16  2015.[2]  (ECF No. 1 at 3 (plaintiff's dated signature in original complaint).)

17         Additionally, "the applicable statute of limitations must be tolled while a prisoner

18  completes the mandatory exhaustion process."  Brown v. Valoff, 422 F.3d 926, 943 (9th Cir.

19  2005) (citations omitted).  Defendants argue this action is not timely with tolling for

20  administrative exhaustion.  The undersigned considers this argument below.[3]

21  _____

22  [2] Pursuant to the mailbox rule, the undersigned infers the filing date of this action from the date
    plaintiff signed his complaint.  Jenkins v. Johnson, 330 F.3d 1146, 1149 n.2 (9th Cir. 2003),
    overruled on other grounds, Pace v. DiGuglielmo, 544 U.S. 408 (2005).

23

24  [3]  Defendants argue that the time plaintiff exhausts his administrative remedies runs concurrently
    with the time this action is statutorily tolled, to the extent they overlap.  For purposes of these
25  findings and recommendations, the undersigned finds that these two periods of tolling, i.e.,
    statutory and administrative exhaustion, run consecutively.  See Rodriguez v. Albonico, 2022 WL
26  4096085, at *5-6 (E.D. Cal. Sept. 7, 2022) (acknowledging that there is no binding authority of
    whether equitable tolling when a prisoner exhausts administrative remedies runs concurrently or
27  consecutively with statutory tolling, and there is a split with district courts that have considered the
    matter; finding that the reasoning that these two periods run consecutively is persuasive and
28  more consistent with Ninth Circuit authority).

9

1    Defendants contend that plaintiff filed administrative grievance no. HDSP-B-10-00278

2  regarding the February 5, 2010 incident, on February 15, 2010.  (See ECF No. 238-10 at 2, 11.)

3  Grievance no. HDSP-B-10-00278 was processed as a staff complaint.  (Id. at 2.)  On April 7,

4  2010, grievance no. HDSP-B-10-00278 was partially granted at the first level.  (Id. at 2, 9-10.)

5  There is no record of plaintiff submitting this grievance for further review.  (Id. at 2.)

6    Defendants contend that plaintiff is thereby entitled to tolling for the 51 days grievance

7  no. HDSP-B-10-00278 was pending, i.e., from February 15, 2010, to April 7, 2010.  Four years

8  and 51 days from February 5, 2010, is March 28, 2014.  As discussed above, plaintiff filed this

9  action on January 21, 2015.

10    Plaintiff suggests that he is entitled to tolling while his state habeas corpus petitions

11  challenging the alleged failure of defendant Barton to process his second level grievance

12  submitted in HDSP-B-10-00278 were pending.  Plaintiff suggests that these petitions were part of

13  the administrative exhaustion process.  For the reasons stated herein, the undersigned finds that

14  this argument is without merit.

15    The undersigned is aware of no case law providing that habeas petitions challenging the

16  alleged failure of prison officials to process grievances is part of the administrative exhaustion

17  process.  If prison officials failed to process his second level grievance, as alleged in the state

18  habeas petitions, plaintiff exhausted administrative remedies when the time passed for prison

19  officials to respond to his second level grievance.  Andres v. Marshall, 867 F.3d 1076, 1079 (9th

20  Cir. 2017) (when prison officials fail to process an administrative grievance, the prisoner is

21  deemed to have exhausted administrative remedies).  Filing state habeas petitions challenging the

22  failure of prison officials to respond to administrative grievances is not part of the administrative

23  exhaustion process, as defined by Ninth Circuit case law.

24    In his habeas corpus petition filed in the California Supreme Court, plaintiff claimed that

25  he submitted grievance HDSP-B-10-00278 for second level review on April 25, 2010.  (ECF No.

26  236-4 at 7.)  Plaintiff claimed that defendant Barton refused to respond to this grievance.  (Id.)

27  Prison officials had thirty working days to respond to the second level grievance allegedly

28  submitted by plaintiff.  Former Cal. Code Regs. tit. 15, § 3084.(c).  Giving plaintiff the benefit of

1   the doubt, the undersigned finds that plaintiff exhausted administrative remedies thirty working

2   days after April 25, 2010, i.e., on June 7, 2010.  <u>Andres v. Marshall</u>, 867 F.3d at 1079.

3        Plaintiff is entitled to tolling from the date he submitted his first level administrative

4   grievance in HDSP-B-10-00278 on February 15, 2010, until June 7, 2010, i.e., 112 days.  Adding

5   112 days and four years to February 5, 2010, extends the statute of limitations for plaintiff's

6   claims challenging the February 5, 2010 incident that are not based on the alleged conspiracy to

7   May 28, 2014.  Therefore, plaintiff's claims challenging the February 5, 2010 incident that are not

8   based on the alleged conspiracy are not timely because plaintiff filed the instant action on January

9   21, 2015.

10        *Equitable Tolling Based on State Habeas Petitions*

11        In his opposition, plaintiff argues that he is entitled to equitable tolling for the time his

12   state habeas petitions challenging the alleged failure of defendant Barton to process his second

13   level grievance in HDSP-B-10-00278 were pending.  (ECF No. 289 at 5-6.)  For the reasons

14   stated herein, the undersigned finds that plaintiff is not entitled to equitable tolling on these

15   grounds.

16        Generally, federal courts apply the forum state's law regarding equitable tolling.  <u>Fink v.</u>

17   <u>Shedler</u>, 192 F.3d 911, 914 (9th Cir. 1999).  "Broadly speaking," equitable tolling "applies

18   [w]hen an injured person has several legal remedies and, reasonably and in good faith, pursues

19   one."  <u>McDonald v. Antelope Valley Cmty. Coll. Dist.</u>, 45 Cal.4th 88, 100 (2008) (internal

20   quotation marks and citation omitted).

21        Under California law, equitable tolling is appropriate in a later suit when an earlier suit

22   was filed and where the record shows:  "'(1) timely notice to the defendant in filing the first

23   claim; (2) lack of prejudice to the defendant in gathering evidence to defend against the second

24   claim; and, (3) good faith and reasonable conduct by the plaintiff in filing the second claim.'"

25   <u>Daviton v. Columbia/HCA Healthcare Corp.</u>, 241 F.3d 1131, 1137–38 (9th Cir. 2001) (en banc)

26   (citing <u>Collier v. City of Pasadena</u>, 142 Cal.App.3d 917, 924 (1983)).

27        California has long refused to apply the equitable tolling doctrine to toll the statute of

28   limitations on a claim for a distinct wrong that was not the basis of the earlier proceeding.

1  Daviton, 241 F.3d at 1141.

2  In his relevant state habeas petitions, plaintiff challenged defendant Barton's alleged

3  failure to process plaintiff's second level grievance submitted in HDSP-B-10-00278.  (ECF No.

4  236-4 at 5-43) (plaintiff's habeas petition filed in California Supreme Court).)[4]  Plaintiff's state

5  habeas petitions did not raise claims directly related to the February 5, 2010 incident.  Therefore,

6  plaintiff is not entitled to equitable tolling for the time his state habeas petitions were pending

7  because they challenged a distinct wrong that was not the basis of the at-issue claims raised in the

8  instant action.  See Daviton, 241 F.3d at 1141 ("As the courts have explained for years, the

9  equitable tolling doctrine requires that the same wrong serve as the predicate for the earlier and

10  later proceedings to make sure defendant received proper notice.").[5]

11  *Fraudulent Concealment*

12  In his opposition, plaintiff argues for tolling based on the doctrine of fraudulent

13  concealment, also known as equitable estoppel, because defendant Barton interfered with his

14  administrative grievance regarding the February 5, 2010 incident.  (ECF No. 289 at 7.)  In his

15

16  [4]  The undersigned takes judicial notice of plaintiff's habeas corpus petition filed in the
California Supreme Court.  Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is

17  not subject to reasonable dispute because it ... can be accurately and readily determined from
sources whose accuracy cannot reasonably be questioned."); Harris v. County of Orange, 682

18  F.3d 1126, 1131–32 (9th Cir. 2012) (court may take judicial notice of "documents on file in
federal or state courts").  Plaintiff's habeas corpus petition filed in the California Supreme Court

19  reflects that plaintiff filed habeas corpus petitions in the Lassen County Superior Court and
California Court of Appeal also challenging defendant Barton's alleged failure to process

20  plaintiff's grievance.  (ECF No. 236-4 at 10.)

21  [5] Defendants argue that even were plaintiff entitled to equitable tolling for the time his state
habeas petitions were pending, the instant action would not be timely.  Defendants argue that the

22  time plaintiff's state habeas petitions were pending coexisted with the two year statutory
disability based on imprisonment, which already tolled the statute of limitations.  Defendants

23  argue that plaintiff is not entitled to overlapping tolling.  As discussed in footnote 2 above, there
is no binding authority on this issue and district courts are split on this issue.  The undersigned

24  need not decide whether the tolling for the time plaintiff's state habeas petitions were pending is
concurrent or consecutive to other tolling events because plaintiff does not qualify for equitable

25  tolling for the time his state habeas petitions were pending.  But see Lantzy v. Centex Homes, 31
Cal.4th 363, 370-71 (Cal. 2003) (when equitable tolling is applied, the statute of limitations

26  "stops running during the tolling event, and begins to run again only when the tolling event has

27  concluded," extending the deadline for filing the new action for the length of time of the tolling
event, which is tacked on to the statute of limitations).

28

1  state habeas petitions, plaintiff alleged that Barton removed his grievance regarding the February

2  5, 2010 incident from the lock-box and failed to process it.

3        "Under California law equitable estoppel requires that: '(1) the party to be estopped must

4  be apprised of the facts; (2) that party must intend that his or her conduct be acted on, or must so

5  act that the party asserting the estoppel had a right to believe it was so intended; (3) the party

6  asserting the estoppel must be ignorant of the true state of facts; and (4) the party asserting the

7  estoppel must reasonably rely on the conduct to his or her injury.'" Lukovsky v. City & Cty. of

8  San Francisco, 535 F.3d 1044, 1051-52 (9th Cir. 2008) (quoting Honig v. San Francisco Planning

9  Dep't, 127 Cal. App. 4th 520, 529 (2005)).  "[T]he focus of the equitable estoppel analysis is not

10 whether the plaintiff knew she had a cause of action ... but whether the defendant's fraudulent

11 concealment or misrepresentation deprived the plaintiff of a full understanding of the true facts,

12 and thus, dissuaded the plaintiff from filing the claim at issue within the limitations period."

13 Estate of Amaro v. City of Oakland, 653 F.3d 808, 813 (9th Cir. 2011).  In short, "[t]he doctrine

14 'focuses primarily on the actions taken by the defendant to prevent a plaintiff from filing suit.'"

15 Id. (quoting Santa Maria v. Pac. Bell, 202 F.3d 1170, 1176 (9th Cir. 2000)).[6]

16        Defendant Barton's alleged failure to process plaintiff's grievance regarding the February

17 5, 2010 incident did not deprive plaintiff of a full understanding of his claims.  For this reason,

18 the doctrine of fraudulent concealment/equitable estoppel is not applicable.

19        *Conclusion*

20        For the reasons discussed above, the undersigned finds that plaintiff's Eighth Amendment

21 and retaliation claims against defendants Barton, Probst and Robinette based on the February 5,

22 2010 incident, *which are not based on the alleged conspiracy*, are barred by the statute of

23 _____

24 [6] As observed by the district court in Hidalgo v. Engle, 2021 WL 4341123, at *4 n.1 (Aug. 30, 2021), in unpublished opinions, Ninth Circuit panels have alternatively cited to federal law and

25 state law when analyzing equitable estoppel in Section 1983 actions. See, e.g., Gibbs v. Farley, 723 F. App'x 458, 458 (9th Cir. 2018) (citing the California Court of Appeal for California law);

26 Hunter v. Ballard, 627 F. App'x 612, 612 (9th Cir. 2015) (citing Lukovsky for California law); Estate of Amaro v. City of Oakland, 653 F.3d 808, 814 (9th Cir. 2011) (describing requirements

27 under federal law); see also Marlowe v. City & Cty. of San Francisco, 753 F. App'x 479, 480 (9th Cir. 2019) ("[C]laims under § 1983 borrow the forum state's equitable defenses to the statute of

28 limitations.")

limitations.  If plaintiff can demonstrate that his claims regarding the February 5, 2010 incident

are part of the alleged conspiracy, his claims regarding February 5, 2010 are not time-barred.

Accordingly, the undersigned herein considers defendants' motion for summary judgment as to

the merits of plaintiff's Eighth Amendment, retaliation and conspiracy claims based on the

February 5, 2010 incident.  Lacey v. Maricopa County, 693 F.3d at 935 (for a conspiracy claim,

there must always be an underlying constitutional violation).

      B.  Did Plaintiff Administratively Exhaust His Claims Arising Out of the January 16,

         2013 Assault?

         *Legal Standard for Administrative Exhaustion*

Because plaintiff is a prisoner suing over the conditions of his confinement, his claims are

subject to the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a).  Under the PLRA,

"[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or

any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); Porter v.

Nussle, 534 U.S. 516, 520 (2002) ("§ 1997e(a)'s exhaustion requirement applies to all prisoners

seeking redress for prison circumstances or occurrences").  "[T]hat language is 'mandatory':  An

inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent

exhaustion of available administrative remedies."  Ross v. Blake, 136 S. Ct. 1850, 1856 (2016)

(citations omitted).  However, "inmates are not required to specially plead or demonstrate

exhaustion in their complaints."  Jones v. Bock, 549 U.S. 199, 216 (2007).  Instead, "the

defendant in a PLRA case must plead and prove nonexhaustion as an affirmative defense," and it

is the defendant's burden "to prove that there was an available administrative remedy, and that

the prisoner did not exhaust that available remedy."  Albino v. Baca, 747 F.3d 1162, 1171-72 (9th

Cir. 2014) (en banc) (citations omitted).

         *Discussion*

Defendants argue that plaintiff failed to exhaust administrative remedies regarding his

claims arising out of the January 16, 2013 assault by inmate Dolihite.  In support of this

argument, in undisputed fact no. 10, defendants cite the declaration of High Desert State Prison

("HDSP") Appeals Coordinator Espinoza.  (ECF No. 238-10.)  Litigation Coordinator Espinoza

states that after a diligent search of plaintiff's appeals, there is no record of plaintiff submitting an

appeal, accepted for review, regarding an incident involving inmate Dohilite on January 16, 2013.

(Id. at 2.)  Defendants also cite the declaration of the Acting Chief of the Office of Appeals for

the California Department of Corrections, J. Spaich.  (ECF No. 238-6.)  Acting Chief Spaich

states that after a diligent search of plaintiff's appeals, there is no record of plaintiff submitting an

appeal, accepted for third level review, regarding an incident involving inmate Dohilite on

January 16, 2013.  (Id. at 3.)

In his verified opposition, plaintiff contends that he did not file an administrative appeal

regarding the January 16, 2013 assault out of fear for his life.  (ECF No. 289 at 8.)  In support of

this argument, plaintiff cites McBride v. Lopez, 807 F.3d 982 (9th Cir. 2015).  (Id.)

In his verified response to defendants' undisputed fact no. 58, plaintiff claims that

defendants "committed all of these crimes against me" because of plaintiff's lawsuit in Crane v.

McDonald, case 2:11-cv-663 KJM CKD P, filed against defendant Davey.  (ECF No. 283 at 18.)

In his verified response to defendants' undisputed fact no. 10, plaintiff also claims that he did not

file an appeal regarding the assault by inmate Dohilite because he was "in grave fear of losing his

life by HDSP prison officials."  (Id. at 4.)  Plaintiff claims, "Plaintiff lied to these officials to

make them think I would not inform on what they did to me.  I was literally terrified of these

officials after they tried to have me killed."  (Id.)  Based on these allegations, plaintiff appears to

claim that he did not file an appeal regarding the January 16, 2013 assault out of fear that

defendants would retaliate against him for doing so, in further retaliation for pursuing case 11-cv-

663.

A threat of retaliation may render the prison grievance system effectively unavailable, and

excuse a prisoner's failure to exhaust administrative remedies.  McBride v. Lopez, 807 F.3d at

984, 987–88.  To avoid the exhaustion bar on the ground of a fear of retaliation, a prisoner must

show both a subjective and objective basis for that fear.  Id.  To meet the subjective prong, the

prisoner must "provide a basis for the court to find that he actually believed prison officials would

retaliate against him if he filed a grievance" and that he was actually deterred from filing a

1   grievance.  Id. at 987–88.  To meet the objective prong, "there must be some basis in the record

2   for the district court to conclude that a reasonable prisoner of ordinary firmness would have

3   believed that the prison official's action communicated a threat not to use the prison's grievance

4   procedure and that the threatened retaliation was of sufficient severity to deter a reasonable

5   prisoner from filing a grievance."  Id. at 987.

6          In the reply to plaintiff's opposition, defendants argue that plaintiff has not demonstrated

7   that he actually believed that prison officials would retaliate against him if he filed a grievance

8   regarding the January 16, 2013 incident involving inmate Dohilite.  (ECF No. 302 at 4-5.)

9   Defendants observe that on January 31, 2013, plaintiff filed a motion for a preliminary injunction

10  in case 11-cv-663 regarding the January 16, 2013 incident.[7]  (See 2: 11-cv-663 at ECF No. 55.)

11  In this motion, plaintiff alleged that on January 16, 2013, an inmate stabbed him in the neck while

12  plaintiff was using the computer in GED class.  (Id.)  Plaintiff alleged that this attempted murder

13  was "very likely" staged by prison officials because corrupt guards were working, including some

14  at the scene.  (Id.)  Plaintiff served this motion on defense counsel in case 11-cv-663.  (Id.)

15         Defendants contend that plaintiff repeated the allegations made in the motion for

16  injunctive relief filed on January 31, 2013, in case 11-cv-663, in a motion filed in Crane v.

17  Hatton, N.D. Case No. 5-11-cv-3900, on February 1, 2013.[8]  (ECF No. 236-4 at 61-62.)  Plaintiff

18  served this motion on defense counsel in that case.  (Id. at 63.)

19         Defendants observe that while plaintiff alleges that he did not file a grievance regarding

20  the January 16, 2013 incident out of fear of retaliation, plaintiff pursued several other appeals,

21

22  [7] The undersigned takes judicial notice of the relevant pleadings filed in case 11-cv-663.  Fed. R.
    Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute
23  because it ... can be accurately and readily determined from sources whose accuracy cannot
    reasonably be questioned."); Harris v. County of Orange, 682 F.3d 1126, 1131–32 (9th Cir. 2012)
24  (court may take judicial notice of "documents on file in federal or state courts").

25  [8] The undersigned takes judicial notice of plaintiff's motion for preliminary injunction filed in 5-
    11-cv-3900.  Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to
26  reasonable dispute because it ... can be accurately and readily determined from sources whose
    accuracy cannot reasonably be questioned."); Harris v. County of Orange, 682 F.3d 1126, 1131–
27  32 (9th Cir. 2012) (court may take judicial notice of "documents on file in federal or state
    courts").
28

1   including an appeal regarding the March 1, 2013 incident alleged in the second amended

2   complaint.  Defendants refer to the Inmate/Parolee Appeals Tracking System ("IATS") appeal

3   history for plaintiff.  (ECF No. 238-10 at 5-7.)  This document indicates that prison officials

4   received first and second level grievances from plaintiff in March 2013, April 2013, May 2013

5   and July 2013.  (Id. at 7.)  One of these grievances concerned the March 1, 2013 incident.  (ECF

6   No. 238-6 at 28-43.)

7        Plaintiff's filing of the motions for injunctive relief and submission of the grievances

8   discussed above undermine plaintiff's claim that he actually believed prison officials would

9   retaliate against him for filing a grievance regarding the January 16, 2013 incident.  Accordingly,

10   the undersigned finds that plaintiff has not demonstrated that he actually believed that prison

11   officials would retaliate against him if he filed a grievance regarding the January 16, 2013

12   incident.

13        For the reasons discussed above, the undersigned finds that plaintiff failed to exhaust

14   administrative remedies regarding the January 16, 2013 incident.  Accordingly, defendants should

15   be granted summary judgment as to plaintiff's Eighth Amendment, retaliation and conspiracy

16   claims based on the January 16, 2013 incident, including the related claims against defendant

17   Davey, on these grounds.

18        Because plaintiff failed to administratively exhaust his claims regarding the January 16,

19   2013 incident, the undersigned will not address defendants' motion for summary judgment as to

20   the merits of plaintiff's claims regarding the January 16, 2013 incident.

21        C.  Legal Standards re:  Merits of Plaintiff's Claims

22             *Failure to Protect*

23        The Eighth Amendment protects prisoners from inhumane methods of punishment and

24   from inhumane conditions of confinement.  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir.

25   2006).  Prison officials must provide prisoners with medical care and personal safety and must

26   take reasonable measures to guarantee the safety of the inmates.  Farmer v. Brennan, 511 U.S.

27   825, 832–33 (1994) (internal citations and quotations omitted).  Prison officials have a duty under

28   the Eighth Amendment to protect prisoners from violence at the hands of other prisoners because

1  being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for

2  their offenses against society.  Farmer, 511 U.S. at 833–34 (quotation marks omitted); Clem v.

3  Lomeli, 566 F.3d 1177, 1181 (9th Cir. 2009); Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir.

4  2005).

5          However, prison officials are liable under the Eighth Amendment only if they demonstrate

6  deliberate indifference to conditions posing a substantial risk of serious harm to an inmate; and it

7  is well settled that deliberate indifference occurs when an official acted or failed to act despite his

8  knowledge of a substantial risk of serious harm.  Farmer, 511 U.S. at 834, 841 (quotations

9  omitted); Clem, 566 F.3d at 1181; Hearns, 413 F.3d at 1040.

10          *Retaliation*

11          To demonstrate First Amendment retaliation by prison officials, a plaintiff must show:

12  (1) that a state actor took some adverse action against a prisoner (2) because of (3) that prisoner's

13  protected conduct, and that such action (4) would chill or silence a person of ordinary firmness

14  from future First Amendment activities, and (5) the retaliatory action did not reasonably advance

15  a legitimate correctional goal.  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005)

16  (citations omitted).

17          *Excessive Force*

18          The use of excessive force by a prison official violates the Eighth Amendment.  Hudson v.

19  McMillian, 503 U.S. 1, 3-4 (1992).  Determining whether there has been an Eighth Amendment

20  violation turns upon "'whether force was applied in a good faith effort to maintain or restore

21  discipline or maliciously and sadistically for the very purpose of causing harm.'"  Id. at 6

22  (quoting Whitley v. Albers, 475 U.S. 312, 320-21 (1986)).

23          To determine whether the use of force violates the Eighth Amendment, the court should

24  consider the "extent of injury ..., the need for application of force, the relationship between that

25  need and the amount of force used, the threat 'reasonably perceived by the responsible officials,'

26  and 'any efforts made to temper the severity of a forceful response.'"  Hudson, 503 U.S. at 7

27  (quoting Whitley, 475 U.S. at 321).

28  ////

1

*Qualified Immunity*

2          Government officials enjoy qualified immunity from civil damages unless their conduct

3    violates clearly established statutory or constitutional rights.  Jeffers v. Gomez, 267 F.3d 895, 910

4    (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  When a court is

5    presented with a qualified immunity defense, the central questions for the court are:  (1) whether

6    the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the

7    defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue

8    was "clearly established."  Saucier v. Katz, 533 U.S. 194, 201 (2001), receded from, Pearson v.

9    Callahan, 555 U.S. 223 (2009) (the two factors set out in Saucier need not be considered in

10   sequence).  "Qualified immunity gives government officials breathing room to make reasonable

11   but mistaken judgments about open legal questions."  Ashcroft v. al-Kidd, 563 U.S. 731, 743

12   (2011).

13          "For the second step in the qualified immunity analysis—whether the constitutional right

14   was clearly established at the time of the conduct—the critical question is whether the contours of

15   the right were 'sufficiently clear' that every 'reasonable official would have understood that what

16   he is doing violates that right.'"  Mattos v. Agarano, 661 F.3d 433, 442 (9th Cir. 2011) (quoting

17   al-Kidd, 563 U.S. at 741) (some internal marks omitted).  "The plaintiff bears the burden to show

18   that the contours of the right were clearly established."  Clairmont v. Sound Mental Health, 632

19   F.3d 1091, 1109 (9th Cir. 2011). "Whether the law was clearly established must be undertaken in

20   light of the specific context of the case, not as a broad general proposition."  Estate of Ford v.

21   Ramirez-Palmer, 301 F.3d 1043, 1050 (9th Cir. 2002) (citation and internal marks omitted).

22

*Conspiracy*

23          A conspiracy claim brought under section 1983 requires proof of "an agreement or

24   meeting of the minds to violate constitutional rights," Franklin v. Fox, 312 F.3d 423, 441 (9th Cir.

25   2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540–41

26   (9th Cir. 1989) (citation omitted) ), and an actual deprivation of constitutional right, Hart v. Parks,

27   450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866

28   F.2d 1121, 1126 (9th Cir. 1989) ).  "Conspiracy is not itself a constitutional tort under § 1983,"

and it "does not enlarge the nature of the claims asserted by the plaintiff, as there must always be an underlying constitutional violation." Lacey v. Maricopa County f, 693 F.3d 896, 935 (9th Cir. 2012) (en banc). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." Franklin, 312 F.3d at 441 (quoting United Steel Workers, 865 F.2d at 1541). Plaintiff must allege that defendants conspired or acted jointly in concert and that some overt act was done in furtherance of the conspiracy. Sykes v. State of California, 497 F.2d 197, 200 (9th Cir. 1974).

Vague and conclusory allegations of a conspiracy with no supporting factual averments or evidence will not withstand an adequately supported motion for summary judgment. See Margolis v. Ryan, 140 F.3d 850, 853 (9th Cir. 1998) (to survive summary judgment on a conspiracy claim, a party must provide material facts showing an agreement among the conspirators to deprive the party of their rights); Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (vague and conclusory allegations of officials participation in civil rights violations are not sufficient).

However, "[s]uch an agreement need not be overt, and may be inferred on the basis of circumstantial evidence such as the action of the defendants." Mendocino Env't Ctr. v. Mendocino County., 192 F.3d 1283, 1301–02 (9th Cir. 1999). "Whether defendants were involved in an unlawful conspiracy is generally a factual issue and should be resolved by the jury, so long as there is a possibility that the jury can infer from the circumstances (that the alleged conspirators) had a meeting of the minds and thus reached an understanding to achieve the conspiracy's objectives." Id. at 1301 (citation and internal quotation marks omitted).

D. Preliminary Matters

Where appropriate, the undersigned herein considers the allegations in plaintiff's verified second amended complaint as evidence in support of plaintiff's opposition. Lopez v. Smith, 203 F.3d 1122, 1132 n. 14 (9th Cir. 2000) (en banc) (plaintiff's verified complaint may serve as an affidavit in opposition to summary judgment if based on personal knowledge and specific facts admissible in evidence).

Plaintiff's response to defendants' statement of undisputed facts is also verified.

20

Therefore, where appropriate, the undersigned considers the statements made by plaintiff in the response as an affidavit in opposition.

In the reply to several of plaintiff's responses to defendants' statement of 99 undisputed facts, defendants argue that plaintiff's responses are conclusory and fail to address the facts asserted.  In light of the Ninth Circuit's directive that a document filed pro se be construed liberally, the undersigned shall strive to resolve defendants' summary judgment motion on the merits.  Estelle v. Gamble, 429 U.S. 97, 106 (1976) (document filed pro se is "to be liberally construed"); Erickson v. Pardus, 551 U.S. 89, 94 (2007); Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice.").  Therefore, while some of plaintiff's responses to defendants' undisputed facts may be conclusory and/or fail to directly address the undisputed facts alleged, the undersigned considers the evidence submitted by plaintiff in evaluating the merits of defendants' proposed undisputed facts.

E.  Merits of Retaliation and Eighth Amendment Claims Regarding February 5, 2010 Incident:  Defendants Barton, Probst and Robinette

As discussed above, plaintiff's claims regarding the February 5, 2010 incident are barred by the statute of limitations unless plaintiff demonstrates that the February 5, 2010 incident was part of the conspiracy alleged in the second amended complaint.  Accordingly, the undersigned herein considers the merits of the claims regarding the February 5, 2010 incident.  Hart v. Parks, 450 F.3d at 1071 (a conspiracy claim requires an actual deprivation of a constitutional right).

1.  Disputed and Undisputed Facts

Defendants undisputed facts nos. 12-27 and 94-95 are directly relevant to plaintiff's clams regarding the February 5, 2010 incident.

*Undisputed Facts*

Undisputed Fact No. 12:  Plaintiff and inmate Washington were celled together on December 31, 2009.   (ECF No. 236-3 at 5; ECF No. 283 at 5 (plaintiff's response).)

Undisputed Fact No. 13:  Inmate Washington was not documented as an enemy of plaintiff when they were celled together on December 31, 2009.  (ECF No. 236-3 at 5; ECF No. ////

21

1   238-15 at 2 (McConnell declaration); ECF No. 283 at 5 (plaintiff's response).)[9]

2           Undisputed Fact No. 17:   Plaintiff and inmate Washington did not have a physical

3   altercation prior to February 5, 2010.  (ECF No. 236-3 at 6; ECF No. 238-4 at 2 (Probst

4   declaration); ECF No. 238-5 at 2 (Barton declaration); ECF No. 283 at 6 (plaintiff's response);

5   ECF No. 16 at 4 (plaintiff's verified second amended complaint)).[10]

6           Undisputed Fact No. 18:   On February 5, 2010, plaintiff and inmate Washington had a

7   physical altercation.  (ECF No. 236-3 at 6; ECF No. 302-1 at 8 (defendants' reply to plaintiff's

8   response to defendants' statement of undisputed facts); ECF No. 283 at 6 (plaintiff's response).)[11]

9           Undisputed Fact No. 20:   Defendants Barton and Probst did not witness the altercation

10  between plaintiff and inmate Washington on February 5, 2010.  (ECF No. 302-1 at 8-9; ECF No.

11  238-5 at 2 (Barton declaration); ECF No. 238-4 at 2 (Probst declaration); ECF No. 283 at 7; ECF

12  No. 283 at 7 (plaintiff's response).)

13          Undisputed Fact No. 22:   There is no record of plaintiff submitting a written cell move

14  request prior to the February 5, 2010 incident.  (ECF No. 236-8 at 8; ECF No. 238-13 at 2

15  (McDonnell declaration ); ECF No. 283 at 8 (plaintiff's response).)[12]

16          Undisputed Fact Nos. 23, 24:   Under California Code of Regulations, title 15, section

17  3084.9, inmates can submit emergency appeals under certain circumstances, including threats of

18  death or injury due to enemies or other placement concerns.  (ECF No. 236-3 at 8; ECF No. 238-

19  _____

20  [9] In his response to defendants' undisputed fact no. 13, plaintiff alleges that on December 31,
    2009, he told defendants Barton and Probst that he and inmate Washington were enemies.  (ECF
21  No. 283 at 5.)  However, plaintiff does not dispute that he and inmate Washington were not
    documented as enemies on December 31, 2009.  (Id.)

22  [10]  In undisputed fact no. 17, defendants contend that plaintiff and inmate Washington celled
23  together "without incident" until February 5, 2010.  (ECF No. 236-3 at 6.)  The term "without
    incident" is vague.  For this reason, the undersigned finds that it is undisputed that plaintiff and
24  inmate Washington did not have a physical altercation prior to February 5, 2010.

25  [11]  In his response to defendants' undisputed fact no. 18, plaintiff alleges that inmate Washington
26  attacked him on February 5, 2010.  (ECF No. 283 at 6.)

27  [12] In response to defendants' undisputed fact no. 22, plaintiff does not dispute that he did not
    submit a written cell move request prior to the February 5, 2010 incident.  (ECF No. 283 at 8.)
28  Plaintiff contends that he made verbal requests for a cell move.  (Id.)

10 (Espinoza declaration); ECF No. 283 at 8 (plaintiff's response).)  Emergency appeals are responded to within 48 hours.  (ECF No. 236-3 at 8; ECF No. 283 at 8 (plaintiff's response).)[13]

Undisputed Fact No. 25:  There is no record of plaintiff submitting an emergency appeal, requesting a cell move or complaining in writing of safety concerns prior to the February 5, 2010 incident.  (ECF No. 236-3 at 8-9; ECF No. 238-10 at 3 (Espinoza declaration); ECF No. 283 at 9 (plaintiff's response).)

Undisputed Fact No. 26:  Plaintiff received a Rules Violation Report for fighting with inmate Washington.  (ECF No. 283 at 9; ECF No. 238-13 at 29 (rules violation report); ECF No. 283 at 9 (plaintiff's response).)[14]

Undisputed Fact No. 27:   Plaintiff and inmate Washington signed a compatibility chrono. (ECF No. 238-13 at 38 (compatibility chrono).)  The compatibility chrono states that on February 5, 2010, they engaged in mutual combat with each other.  (Id.)  The compatibility chrono states that on February 5, 2010, separate interviews were conducted with plaintiff and inmate Washington.  (Id.) The compatibility chrono states that subsequently, both inmates claimed they do not consider each other as enemies and could program together, without committing acts of violence against each other.  (Id.)  Plaintiff and inmate Washington wrote their signatures below lines stating that they did not consider the other to be an enemy.[15]  (Id.)

////

---

[13] In response to defendants' undisputed fact no. 23, plaintiff contends that "this was not happening at HDSP."  (ECF No. 283 at 8.)  Plaintiff contends that the OIG Special Review found that the appeals process was not functioning.  (Id.)  Plaintiff does not dispute that the regulations provided for emergency appeals that were supposed to be responded to within 48 hours.  In addition, the undersigned previously declined to take judicial notice of the OIG report because the report does not specifically address the incidents plaintiff challenges in this action, does not include plaintiff's name, does not address the issue of retaliation and addresses use of force incidents after the incidents alleged in the second amended complaint.  (ECF No. 160 at 4.)

[14] In response to defendants' undisputed fact no. 26, plaintiff does not dispute that he received a Rules Violation Report for fighting with inmate Washington, although he contends the report was false.  (ECF No. 283 at 9.)

[15] In response to defendants' undisputed fact no. 27, plaintiff states that he signed the chrono because guards were threatening to place him in ad seg.  (ECF No. 283 at 9.)

1    *Disputed Facts*

2        The undersigned finds that defendants' undisputed facts nos. 14, 15, 16, 19, 21, 94, 95 and

3    96 are disputed.  Accordingly, the undersigned refers to these facts as disputed herein.

4        Disputed Fact No. 14:  The parties dispute whether plaintiff told defendants Barton,

5    Robinette and Probst that he and Washington were enemies when they were celled together.

6    (ECF No. 236-3 at 5; ECF No. 238-5 at 1 (Barton declaration); 238-4 at 1 (Probst declaration);

7    ECF No. 238-1 at 2 (Robinette declaration); ECF No. 283 at 5 (plaintiff's response to defendants'

8    undisputed fact no. 14); ECF No. 16 at 3-4 (plaintiff's verified second amended complaint)[16];

9    ECF No. 300 at 2 (plaintiff's declaration).)

10        Disputed Fact No. 15:  The parties dispute whether defendant Barton told plaintiff that he

11    was going to kill him.  (ECF No. 236-3 at 6; ECF No. 238-5 at 2 (Barton declaration); ECF No.

12    283 at 6 (plaintiff's response to defendants' undisputed fact no. 15); ECF No. 16 at 3 (plaintiff's

13    verified second amended complaint).)

14        Disputed Fact No. 16:  The parties dispute whether defendant Probst threatened plaintiff

15    in response to a request to speak to the sergeant or at any time.  (ECF No. 236-3 at 6; ECF No.

16    238-4 at 2 (Probst declaration); ECF No. 283 at 6 (plaintiff's response to defendants' undisputed

17    fact no. 16); ECF No. 16 at 3 (plaintiff's verified second amended complaint).)

18        Disputed Fact No. 19:  In undisputed fact no. 19, defendants contend that defendants

19    Barton and Probst did not encourage inmate Washington to fight plaintiff, did not know that they

20    would fight on February 5, 2010, and had no reason to know that these inmates would fight on

21    that date.  (ECF No. 302-1 at 8.)

22        For the following reasons, the undersigned finds that whether defendants Barton and

23    Probst encouraged inmate Washington to fight plaintiff is disputed.

24        In their declarations, defendants Barton and Probst state that they did not encourage

25    inmate Washington to fight plaintiff, they did not know that plaintiff and inmate Washington

26

27    [16]  In his verified second amended complaint, plaintiff alleges that on December 31, 2009, he told
       defendants Barton and Probst, "I can't live with Washington, we are enemies!"  (ECF No. 16 at
28    3.)  Plaintiff alleges that defendant Barton responded, "I don't care, I'm going to kill you!"  (Id.)

would fight on February 5, 2010, and had no reason to know that these inmates would fight on that date.  (ECF No. 238-4 at 2 (Probst declaration); ECF No 238-5 at 2 (Barton declaration).)

Plaintiff submitted the verified declaration of inmate Washington.  Inmate Washington states that on December 31, 2009, defendant Barton approached him and said, "You are getting a new cellie."  (ECF No. 16-1 at 2.)  Defendant Barton told inmate Washington that the move had nothing to do with him.  (Id.)  Defendant Barton told inmate Washington, "It's this asshole moving in with you…He needs to learn a lesson about filing all this paperwork….we know you're not going to tolerate an asshole!"  (Id.)  Inmate Washington states that defendant Barton was referring to plaintiff.  (Id.)

As discussed above, in the verified second amended complaint, plaintiff alleges that defendants Barton and Probst told him that they were moving him in with inmate Washington.  (ECF No. 16 at 3.)  In his declaration, inmate Washington alleges that defendant Barton told him, "[w]e know you're not going to tolerate an asshole!"  (ECF No. 16-2 at 2.)  By "we," it appears that defendant Barton referred to himself and defendant Probst.  The alleged statement, "[w]e know you're not going to tolerate an asshole," could be interpreted as encouragement by defendants Barton and Probst for inmate Washington to assault plaintiff.  Accordingly, based on this evidence, the undersigned finds that whether defendants Barton and Probst encouraged inmate Washington to fight plaintiff is a disputed fact.

In his declaration, inmate Washington states that on February 5, 2010, he and plaintiff had a disagreement and argument.  (Id. at 3.)  This argument escalated into violence.  (Id.)  Plaintiff provides no evidence suggesting that either defendant Barton or Probst were aware of the disagreement between plaintiff and inmate Washington on February 5, 2010, that led to the physical altercation on that date.  Accordingly, the undersigned finds that it is undisputed that defendants Barton and Probst did not know that plaintiff and inmate Washington would have a physical altercation on February 5, 2010.

Disputed Fact No. 21:  In undisputed fact no. 21, defendants contend that defendants Barton, Probst and Robinette had no knowledge of plaintiff requesting a cell move away from inmate Washington before the February 5, 2010 incident.  (ECF No. 236-3 at 7.)  For the

following reasons, the undersigned finds that defendants' undisputed fact no. 21 is disputed.

In their declarations, defendants Barton, Probst and Robinette state that they had no knowledge of plaintiff requesting a cell move away from inmate Washington before the February 5, 2010 incident.  (ECF No. 238-5 at 2 (Barton declaration); ECF No. 238-4 at 2 (Probst declaration); ECF No. 238-1 at 2 (Robinette declaration).)

In his verified second amended complaint, plaintiff alleges that from December 31, 2009, until February 5, 2010, he repeatedly asked defendants Barton, Robinette and Probst and other prison guards to move him away from inmate Washington because inmate Washington was making daily threats to beat plaintiff.  (ECF No. 16 at 4.)  Plaintiff alleges that defendants repeatedly laughed at his requests and defendants Barton and Robinette called plaintiff a bitch.  (Id.)

Based on the conflicting evidence set forth above, the undersigned finds that whether defendants Barton, Probst and Robinette had knowledge of plaintiff requesting a cell move away from inmate Washington before February 5, 2010, is disputed.

Disputed Fact No. 94:  The parties dispute whether defendants Probst, Barton and Robinette ever threatened plaintiff.  (ECF No. 302-1 at 29 (defendants' reply to plaintiff's response to undisputed fact no. 94).)

Disputed Fact No. 95:  The parties dispute whether defendants Probst, Barton and Robinette ever called plaintiff names.  (ECF No. 302-1 at 29 (defendants' reply to plaintiff's response to undisputed fact no. 95).)

2.  Discussion—Eighth Amendment Claim

For the following reasons, defendants Barton, Probst and Robinette should be denied summary judgment as to plaintiff's Eighth Amendment failure-to-protect claim regarding the February 5, 2010 incident.  Whether defendants Barton and Probst knew that inmate Washington posed a substantial risk of serious harm to plaintiff's safety when they moved plaintiff into inmate Washington's cell on December 31, 2009, is disputed.  As discussed above, in his declaration, inmate Washington states that on December 31, 2009, defendant Barton told him, "We know you're not going to tolerate an asshole…he needs to learn a lesson about filing all this

1  paperwork." (ECF No. 16-1 at 2.)  Inmate Washington's declaration suggests that defendants
2  Barton and Probst set plaintiff up to be assaulted by inmate Washington.

3       In his verified second amended complaint, plaintiff alleges that from December 31, 2009,
4  to February 5, 2010, he repeatedly asked defendants Barton, Robinette and Probst to move him
5  away from inmate Washington because inmate Washington threatened to beat plaintiff. (ECF No.
6  16 at 4.)  Plaintiff alleges that defendants laughed at his requests. (Id.)  Based on this evidence,
7  the undersigned finds that whether defendants knew that inmate Washington posed a substantial
8  risk of serious harm to plaintiff and disregarded this knowledge is disputed.

9       The undersigned observes that several facts undermine plaintiff's claim that he faced a
10  substantial risk of serious harm from inmate Washington.  For example, plaintiff received a Rules
11  Violation Report for fighting based on the February 5, 2010 incident, and also signed the
12  compatibility chrono.[17]  The court cannot make credibility determinations regarding plaintiff
13  based on this evidence.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (on summary
14  judgment, the court cannot decide credibility).  However, plaintiff may have to address this
15  evidence at trial.

16       Defendants argue that they are entitled to qualified immunity as to plaintiff's Eighth
17  Amendment claim.  Taking the facts in the light most favorable to plaintiff, the undersigned finds
18  that defendants violated the Eighth Amendment when they moved plaintiff into inmate
19  Washington's cell and refused plaintiff's requests to be moved away from inmate Washington.
20  The undersigned also finds that the law was clearly established such that a reasonable officer
21  would know that their conduct, as alleged by plaintiff, violated the Eighth Amendment.
22  Accordingly, defendants are not entitled to qualified immunity as to this claim.

23       3.  Discussion—Retaliation Claim

24       Defendants move for summary judgment as to plaintiff's retaliation claim based on the
25  February 5, 2010 incident on the grounds that they took no adverse action against plaintiff. (ECF
26  No. 236-2 at 22.)  In support of this argument, defendants cite Watison v. Carter, 668 F.3d 1108,

27
28  [17]  As discussed above, plaintiff claims that the Rules Violation Report was based on false
charges and that he signed the compatibility chrono to avoid being placed in ad seg.

1114-15 (9th Cir. 2012), for the proposition that a retaliation claim requires an adverse action by

defendants against the plaintiff.  (Id.)

Defendants' alleged adverse actions were housing plaintiff with inmate Washington and

denying plaintiff's requests to be moved away from inmate Washington, despite having

knowledge that inmate Washington posed a substantial risk of harm to plaintiff's safety.  As

discussed above, whether defendants committed the alleged adverse actions against plaintiff is

disputed.  For this reason, defendants' motion for summary judgment as to this retaliation claim

should be denied.

The undersigned observes that in their declarations, defendants Robinette, Barton and

Probst state that they "have never taken or encouraged any adverse action against inmate Crane

because of his litigation activities."  (ECF No. 238-1 at 3 (Robinette declaration); ECF No. 238-4

at 2 (Probst declaration); ECF No. 238-5 at 2 (Barton declaration).)  Defendants do not move for

summary judgment as to plaintiff's retaliation claim on the grounds that they were not motivated

by retaliation when they took their alleged adverse actions against plaintiff.  However,

defendants' conclusory statements in their declarations that they never encouraged any adverse

action against plaintiff because of his litigation activities would not meet their initial summary

judgment burden.  See Aqua Connect v. Code Rebel, LLC, 2013 WL 3820544, at *3 (C.D. Cal.

July 23, 2013) (a defendant's conclusory denial of wrongdoing, made in self-serving affidavits,

fails to satisfy threshold requirements of Rule 56) (citing In re Rogstad, 126 F.3d 1224, 1227 (9th

Cir. 1997)).

Defendants also argue that they are entitled to qualified immunity as to plaintiff's

retaliation claim.  Taking the facts in the light most reasonable to plaintiff, defendants Barton and

Probst violated plaintiff's First Amendment rights when they housed plaintiff with inmate

Washington, after encouraging inmate Washington to assault plaintiff in retaliation for plaintiff's

legal work, and denied plaintiff's later requests for a cell move.  The undersigned finds that the

law was clearly established so that a reasonable officer would know that this conduct, if true,

violated the First Amendment.

Taking the facts in the light most favorable to plaintiff, defendant Robinette committed

1  the alleged adverse action of denying plaintiff's requests for a cell move away from inmate

2  Washington after plaintiff communicated his safety concerns regarding inmate Washington.  As

3  discussed above, defendants do not address the other elements of plaintiff's retaliation claim.  For

4  this reason, the undersigned cannot determine whether defendant Robinette is entitled to qualified

5  immunity.  Pearson, 555 U.S. at 238 (undeveloped or disputed material facts preclude application

6  of qualified immunity).

7  　　　　4.  Conclusion

8  　　　　For the reasons discussed above, defendants are not entitled to summary judgment as to

9  the merits of plaintiff's claims regarding the February 5, 2010 incident.  These claims may

10  proceed only if plaintiff's related conspiracy claim survives summary judgment.  The undersigned

11  addresses plaintiff's conspiracy claim in a later section of these findings and recommendations.

12  　　　　F.  Merits of Eighth Amendment and Retaliation Claims Regarding January 22, 2011

13  　　　　　　Incident:  Defendants Robinette and Rodriguez

14  　　　　As discussed above, plaintiff alleges that defendants Robinette and Rodriguez violated the

15  Eighth Amendment by disregarding the risk to his safety when they housed him with inmate

16  Smith.  Plaintiff also claims that defendants Robinette and Rodriguez disregarded the risk to

17  plaintiff's safety from inmate Smith in retaliation for plaintiff's legal activities.

18  　　　　1.  Disputed and Undisputed Facts

19  　　　　Defendants undisputed facts nos. 28-47 are directly relevant to plaintiff's claim regarding

20  the January 22, 2011 incident.

21  　　　　For the reasons stated herein, the undersigned disregards defendants' undisputed fact no.

22  28; the undersigned finds that portions of defendants' undisputed facts nos. 36-38 are based on a

23  "sham" affidavit; the undersigned finds that defendants' undisputed facts nos. 29, 30, 31, 32, 39,

24  41, 43, 44, 46 and 47 are undisputed and defendants undisputed facts nos. 33, 34, 35, 40, 42 and

25  45 are disputed.

26  　　　　*Defendants' Undisputed Fact No. 28 is Disregarded*

27  　　　　In undisputed fact no. 28, defendants contend that "[a]fter plaintiff's cellmate paroled in

28  October of 2010, [defendant] Robinette gave plaintiff ample time to find someone else to live

1   with." (ECF No. 236-3 at 9.)  In support of undisputed fact no. 28, defendants cite defendant

2   Robinette's declaration at paragraph 3.  (Id.)  In his declaration, defendant Robinette states that

3   after plaintiff's cellmate paroled in October 2010, he gave plaintiff "ample time" to find someone

4   else to live with.  (ECF No. 238-1 at 2.)

5         Defendant Robinette's statement that he gave plaintiff "ample time" to find a cellmate is

6   vague.  Defendant Robinette does not state when he told plaintiff to look for a new cellmate or

7   otherwise address the amount of time plaintiff was given to find a new cellmate.   For these

8   reasons, the undersigned finds that defendant Robinette's vague statement that he gave plaintiff

9   "ample time" to find a new cellmate does not demonstrate the absence of a genuine issue of

10  material fact.  Celotex Corp. v. Catrett, 477 U.S. at 323.  Accordingly, defendants' undisputed

11  fact no. 28 is disregarded.

12        *Defendants' Undisputed Fact Nos. 36-38*

13        In support of the second amended complaint, plaintiff submitted the verified declaration of

14  inmate Harrell.  (ECF No. 16-1 at 25.)  In this declaration, signed April 22, 2011, inmate Harrell

15  states that in January 2011, while housed in cell no. 135 in Facility B at HDSP, he lived next door

16  to plaintiff.  (Id.)  Inmate Harrell saw defendant Rodriguez standing in front of plaintiff's cell and

17  heard defendant Rodriguez say, "I'll drag you out of that cell and beat your ass, and throw you

18  back in there." (Id.)  Inmate Harrell states that plaintiff was in his cell when defendant Rodriguez

19  made this statement.  (Id.)  Inmate Harrell states that on January 22, 2011, plaintiff was involved

20  in a violent incident inside his cell.  (Id.)  Inmate Harrell states that defendant Rodriguez made the

21  threatening statements to plaintiff many days prior to January 22, 2011.  (Id.)

22         In undisputed fact no. 36, defendants contend that inmate Harrell was celled next to

23  plaintiff in January 2011 and never heard defendant Rodriguez or any other staff threaten

24  plaintiff.  (ECF No. 236-3 at 12.)  In undisputed fact no. 37, defendants contend that inmate

25  Harrell never witnessed any inmates conspiring with staff to assault plaintiff or staff celling

26  plaintiff with an inmate and refusing to move him in order to set him up for assault.  (Id.)  In

27  undisputed fact no. 38, defendants contend that inmate Harrell never witnessed correctional staff

28  mistreat plaintiff.  (Id.)

In support of undisputed fact nos. 36-38, defendants refer to inmate Harrell's declaration submitted in support of defendants' summary judgment motion, i.e., inmate Harrell's second declaration.  In the second declaration, signed April 16, 2019, inmate Harrell disavows some of the statements made in his declaration submitted by plaintiff.  In the second declaration, inmate Harrell states that he was celled next to plaintiff in January 2011.  (ECF No. 238-12 at 1.) Plaintiff complained that staff were not always picking up his mail.  (Id.)  Inmate Harrell states that plaintiff asked him to sign a declaration regarding his complaint about mail.  (Id.)  Plaintiff prepared a declaration and inmate Harrell signed it.  (Id.)  Inmate Harrell states that he did not read the declaration before signing it, and did not realize that plaintiff had changed the subject of the declaration to an alleged threat from Correctional Officer Rodriguez.  (Id.)  Inmate Harrell states that he did not hear Correctional Officer Rodriguez tell plaintiff, "I'll drag you out of that cell and beat your ass, and throw you back in there."  (Id. at 2.)  Inmate Harrell states that he did not hear any staff threaten plaintiff in 2011.  (Id.)  Inmate Harrell states that had he realized that plaintiff changed the subject of the declaration, he would not have signed it.  (Id.)  Inmate Harrell states that he would be unable to provide any testimony in support of plaintiff's claims because he has no knowledge of those claims.  (Id.)

For purposes of defendants' summary judgment motion, the undersigned herein finds that inmate Harrell's second declaration contains a sham affidavit.

On summary judgment, a witness cannot contradict a previously sworn statement by signing a declaration alleging different facts.  See Cleveland v. Policy Management Systems, Corp., 526 U.S. 795, 806 (1999) (federal courts "have held with virtual unanimity that a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity.").  However, a trial court must make a factual finding that an affidavit is a sham as opposed to "an honest discrepancy, a mistake," or an acceptable explanation or clarification of the prior testimony.  Nelson v. City of Davis, 571 F.3d 924, 928 (9th Cir. 2009).  If the affiant gives a plausible excuse for the contradiction, the affidavit might not be

1    deemed a sham. <u>Jack v. Trans World Airlines, Inc.</u>, 854 F.Supp. 654, 660 (N.D. Cal. 1994)

2    (citing <u>Miller v. A.H. Robins Co.</u>, 766 F.2d 1102, 1104 (7th Cir.1985)).

3         The undersigned first finds that inmate Harrell's statement in his second declaration that

4    he did not hear defendant Rodriguez threaten plaintiff in January 2011 contradicts his first

5    declaration.  For the following reasons, the undersigned finds that inmate Harrell's claim that he

6    signed the first declaration without reading it, and did not know its true contents, is not plausible.

7    Inmate Harrell's first declaration is one page long, containing four numbered paragraphs.  (ECF

8    No. 16-1 at 25.)  Inmate Harrell's first declaration mentions defendant Rodriguez by name in each

9    paragraph.  (<u>Id.</u>)  A quick scan of this document reveals its contents.  Inmate Harrell's first

10   declaration contains inmate Harrell's signature at the bottom of the page.  (<u>Id.</u>)  Based on these

11   circumstances, inmate Harrell's claim that he did not know the contents of the first declaration

12   when he signed it is not credible.

13        Accordingly, for the reasons discussed above, the undersigned finds that inmate Harrell's

14   statement in his second declaration that he did not hear defendant Rodriguez threaten plaintiff is a

15   sham affidavit.  Therefore, defendants' undisputed fact no. 36, claiming that inmate Harrell did

16   not hear defendant Rodriguez threaten plaintiff, is disregarded.

17        In undisputed fact no. 37, citing inmate Harrell's declaration, defendants claim that inmate

18   Harrell never witnessed any inmates conspiring with staff to assault plaintiff or staff celling

19   plaintiff with an inmate and refusing to move plaintiff in order to set him up for assault.  (ECF

20   No. 236-3 at 12.)  Without further explanation of the differences between inmate Harrell's first

21   and second declarations regarding these matters, the undersigned cannot determine the credibility

22   of defendants' undisputed fact no. 37.  Accordingly, undisputed fact no. 37 is disregarded.

23        In undisputed fact no. 38, defendants claim that inmate Harrell never witnessed

24   Correctional Staff mistreat plaintiff.  (<u>Id.</u>)  It is unclear what defendants mean by "mistreat."  For

25   this reason, defendants' undisputed fact no. 38 is disregarded.

26        *Undisputed Facts*

27        <u>Undisputed Fact No. 29:</u>  After plaintiff's cellmate paroled in October of 2010, plaintiff

28   did not provide defendant Robinette with the name of another inmate that he wanted as his

cellmate and nor did he provide defendant Robinette a cell move request.  (ECF No. 236-3 at 10; ECF No. 238-1 at 2 (defendant Robinette declaration).)

Plaintiff does not dispute defendants' undisputed fact no. 29.  (ECF No. 283 at 10.) Plaintiff contends that defendant Robinette refused to allow plaintiff a new cellmate and smiled and said, "I have a new cellmate for you."  (Id.)

Undisputed Fact No. 30:  Prior to the January 22, 2011 incident, plaintiff and inmate Smith were not documented enemies.  (ECF No. 236-3 at 10; ECF No. 238-13 at 2 (declaration of HDSP Litigation Coordinator McConnell).)  Plaintiff and inmate Smith were both on double-cell status.  (ECF No. 236-3 at 10; ECF No. 238-1 at 2 (declaration of defendant Robinette).)

Plaintiff does not dispute defendants' undisputed fact no. 30.  (ECF No. 283 at 10.) However, plaintiff contends that he and inmate Smith were not "compatible" because inmate Smith was a prior gang leader and a Black supremacist with a violent record in and out of prison. (Id. at 10.)

Undisputed Fact No. 31:  There is no record of plaintiff submitting a written cell move request prior to the January 22, 2011 incident.  (ECF No. 236-3 at 10; ECF No. 283-13 at 2 (declaration of Litigation Coordinator McConnell).)

Plaintiff does not dispute defendants' undisputed fact no. 31.  (ECF No. 283 at 10.) Plaintiff alleges that he made verbal requests to be moved away from inmate Smith.  (Id.)

Undisputed Fact No. 32:  There is no record of plaintiff submitting an emergency appeal requesting a cell move prior to the January 22, 2011 incident.  (ECF No. 236-3 at 10); ECF No. 238-10 at 3 (declaration of HDSP Litigation Coordinator Espinoza); ECF No. 283 at 11 (plaintiff's response).)

Undisputed Fact No. 39:  On January 22, 2011, plaintiff requested a cell move from defendant Rodriguez while the facility was on lockdown.  (ECF No. 236-3 at 13 (defendants' undisputed fact no. 39); ECF No. 283 at 13 (plaintiff's verified response to undisputed fact no. 39).)

Undisputed Fact No. 41:  Plaintiff did not tell defendant Rodriguez that inmate Smith was threatening him on January 22, 2011.  (ECF No. 236-3 at 13.)

1    Plaintiff does not dispute defendants' undisputed fact no. 41.  (ECF No. 283 at 13.)

2  Plaintiff alleges that defendant Rodriguez refused to give plaintiff time to explain and refused to

3  listen to plaintiff.  (Id.)

4    Undisputed Fact No. 43:  There is no record of plaintiff or inmate Smith being disciplined

5  because of the January 22, 2011 incident.  (ECF No. 236-3 at 14; ECF No. 238-13 at 2

6  (declaration of Litigation Coordinator McConnell); ECF No. 283 at 14 (plaintiff's response).)

7    Undisputed Fact No. 44:  Plaintiff and inmate Smith signed a compatibility chrono after

8  January 22, 2011, affirming that they were not enemies and could be housed together.  (ECF No.

9  236-3 at 14 (undisputed fact no. 14); ECF No. 238-13 at 30 (compatibility chrono).)

10    In response to undisputed fact no. 44, plaintiff states, "Plaintiff believes the chrono has a

11  forged signature.  The compatibility was required, or plaintiff was told he would be put in

12  segregation."  (ECF No. 283 at 14.)  The undersigned finds that plaintiff's response to undisputed

13  fact no. 44 contains contradictory statements.  Plaintiff states that his signature on the

14  compatibility chrono is forged, but also suggests that he signed the compatibility chrono to avoid

15  being housed in segregation.  The undersigned finds that these contradictory statements do not

16  create a material dispute regarding whether plaintiff signed the compatibility chrono.

17    Undisputed Fact No. 46:  An inquiry was conducted regarding plaintiff's claim that

18  defendants Robinette and Rodriguez set him up to be attacked on January 22, 2011.  (ECF No.

19  236-3 at 15; ECF No. 238-13 at 299-303; ECF No. 283 at 15 (plaintiff's response).)[18]

20    Undisputed Fact No. 47:  The inquiry found that plaintiff likely fabricated his allegations

21  to receive a transfer to another prison.  (ECF No. ECF No. 236-3 at 15;  ECF No. 238-13 at 299-

22  303); ECF No. 283 at 15 (plaintiff's response).)

23    *Disputed Facts*

24    The undersigned finds that defendants' undisputed fact nos. 33-35, 40, 42 and 45 are

25  disputed.  The undersigned herein refers to these facts as disputed.

26    Disputed  Fact Nos. 33, 34, 35:  In undisputed fact no. 34, defendants claim that

27  ─────────────────

28  [18]  In his response to defendants' undisputed fact no. 46, plaintiff contends that, "The alleged
inquiry, if it was ever conducted, was merely a cover-up."  (ECF No. 283 at 15.)

1   defendant Rodriguez did not refuse to move plaintiff from his cell prior to January 22, 2011.  In

2   undisputed fact no. 35, defendants contend that defendant Rodriguez did not threaten plaintiff in

3   response to any request for a cell move.  In the reply to plaintiff's response to defendants'

4   statement of undisputed facts, defendants admit that undisputed fact nos. 34 and 35 are disputed.

5   (ECF No. 302-1 at 13.)

6        In undisputed fact no. 33, defendants contend that defendant Rodriguez has no knowledge

7   of plaintiff requesting a cell move prior to January 22, 2011.  (ECF No. 236-3 at 11.)  Defendants

8   claim that undisputed fact no. 33 is disputed because plaintiff's response does not refute the

9   asserted fact.  (ECF No. 302-1 at 13.)  While plaintiff's response to defendants' undisputed fact

10  no. 33 may be inadequate, defendants' admission that undisputed facts nos. 33 and 34 are

11  disputed renders undisputed fact no. 33 disputed as well.  Nevertheless, the undersigned discusses

12  the relevant evidence regarding disputed fact no. 33 herein.

13       In his declaration, defendant Rodriguez states that he has no knowledge of plaintiff

14  requesting a cell move prior to January 22, 2011, and that he did not refuse to move plaintiff from

15  his cell prior to January 22, 2011.  (ECF No. 238-3 at 1.)

16       In his verified second amended complaint, plaintiff alleges that after prison officials

17  moved inmate Smith into his cell, inmate Smith began threatening him.  (ECF No. 16 at 6.)

18  Plaintiff alleges that he asked defendant Rodriguez and Correctional Officer Patton for a cell

19  move away from inmate Smith, but they refused plaintiff's request.  (Id.)  Plaintiff alleges that

20  during cell feeding in January 2011, defendant Rodriguez walked by plaintiff's cell.  (Id.)

21  Plaintiff asked defendant Rodriguez to move plaintiff out of the cell or to get a sergeant.  (Id.)

22  Defendant Rodriguez responded, "I'll drag you out of that cell and beat your ass, and throw you

23  back in there."  (Id.)  On January 22, 2011, inmate Smith assaulted him in his cell.  (Id.)

24       In his supplemental opposition, plaintiff refers to his reply to defendants' opposition to

25  plaintiff's previously filed cross-motion for summary judgment at ECF No. 164.[19]  (ECF No. 298

26  _____

27  [19] Plaintiff requests that the court take judicial notice of ECF No. 164.  Plaintiff's request for judicial notice is denied as unnecessary.  See Johnson v. Haight Ashbury Med. Clinics, Inc., 2012

28  WL 629312, at *1 (N.D. Cal. Feb. 27, 2012) (denying a request for judicial notice "because it is unnecessary to take judicial notice of documents in the record in this action"); Martinez v. Blanas,

at 5.)  Attached to ECF No. 164 is a verified declaration by inmate Smith.  (ECF No. 164 at 16-17.)  Inmate Smith states that several weeks prior to January 22, 2011, plaintiff asked defendant Rodriguez "to move one of us (to avoid a violent incident), and Rodriguez made a threatening response" to plaintiff's request.  (Id. at 16.)

Plaintiff also refers to the verified declaration of inmate John Harrell attached to his second amended complaint.  As discussed above, in his declaration, inmate Harrell states that "many days" prior to the January 22, 2011 incident, he heard defendant Rodriguez say to plaintiff (while plaintiff was in his cell), "I'll drag you out of that cell and beat your ass, and throw you back in there."  (ECF No. 16-1 at 25.)

Based on the statements in the declarations by inmates Smith and Harrell, as well as the relevant verified allegations in plaintiff's second amended complaint, the undersigned finds that whether defendant Rodriguez had knowledge of plaintiff requesting a cell move prior to January 22, 2011 is disputed.

Disputed Fact No. 40:  In undisputed fact no. 40, defendants contend that defendant Rodriguez told plaintiff that once the lockdown ended, he would complete a cell move for plaintiff.  (ECF No. 236-3 at 13.)  For the reasons stated herein, the undersigned finds that undisputed fact no. 40 is disputed.

In his declaration, defendant Rodriguez states that on January 22, 2011, plaintiff requested a cell move from defendant Rodriguez while the facility was on lockdown, and he told plaintiff that once lockdown ended he would complete a cell move for him.  (ECF No. 238-3 at 2.)

In his verified response to undisputed fact no. 40, plaintiff alleges, "The only response plaintiff remember ever coming from Rodriguez when he requested a cell move was, 'I'll drag you out of that cell and beat your ass, and throw you back in there.'  Rodriguez said, 'I'll drag you out by your hair.'  Rodriguez never said he would ever do a cell move."  (ECF No. 283 at 13.)  Plaintiff claims that defendant Rodriguez made this statement in response to his first request

---

2011 WL 864956, at *1 n.1 (E.D. Cal. Mar. 10, 2011) ("Defendant's request for judicial notice of the second amended complaint will be denied as unnecessary.  The second amended complaint and its exhibits are a part of the record.").

for a cell move.  Therefore, it appears that in his response to undisputed fact no. 40, plaintiff disputes whether, on January 22, 2011, defendant Rodriguez told him that he would move plaintiff once the lockdown ended.

Based on the evidence discussed above, the undersigned finds that the fact as to whether Rodriguez told plaintiff on January 22, 2011, that once the lockdown ended he would complete a cell move for plaintiff is disputed.

Disputed Fact No. 42:  In undisputed fact no. 42, defendants contend that plaintiff and inmate Smith were in a fight on January 22, 2011.  (ECF No. 236-3 at 13.)  In his verified response to undisputed fact no. 43, plaintiff contends that he did not fight inmate Smith.  (ECF No. 283 at 13.)  Plaintiff contends that inmate Smith attacked him from behind.  (Id.)  Based on these allegations, the undersigned finds that whether plaintiff and inmate Smith engaged in a mutual fight on January 22, 2011, is disputed.

Disputed Fact No. 45:  In undisputed fact no. 45, defendants state that defendant Rodriguez did not encourage inmate Smith to fight plaintiff, did not know that they would fight on January 22, 2011, and had no reason to know that these inmates would fight on that date. (ECF No. 236-3 at 14.)  In support of undisputed fact no. 45, defendants refer to the declaration of defendant Rodriguez who states that he did not encourage inmate Smith to fight plaintiff, did not know that plaintiff and inmate Smith would fight on January 22, 2011, and had no reason to know that these inmates would fight on that date.  (ECF No. 238-3 at 2.)

In his verified response to undisputed fact no. 45, plaintiff states that he does not know if defendant Rodriguez encouraged inmate Smith to assault plaintiff, "but he gave him clear indication of his permission when he refused the plaintiff a cell move, and saying, 'I'll drag you out of that cell and beat your ass, and throw you back in there.'"  (ECF No. 283 at 15.)

It is undisputed that plaintiff asked for a cell move on January 22, 2011.  As discussed above, plaintiff also claims that he previously communicated his safety concerns regarding inmate Smith to defendant Rodriguez when he asked for a cell move earlier in January 2011.  Based on this evidence, the undersigned finds that whether defendant Rodriguez knew that plaintiff and inmate Smith would have a physical altercation on January 22, 2011, when plaintiff made his

1   second request for a cell move, or had reason to know that plaintiff and inmate Smith would have

2   a physical altercation on that date, is disputed.

3        2.  Discussion—Defendant Robinette

4        Defendants move for summary judgment as to defendant Robinette on the grounds that he

5   had no foreknowledge of the January 22, 2011 incident.  For the reasons stated herein, the

6   undersigned finds that plaintiff has not presented sufficient evidence demonstrating that defendant

7   Robinette knew that inmate Smith posed a substantial risk of serious harm to plaintiff at the time

8   he housed them together.

9        As stated above, it is undisputed that plaintiff and inmate Smith were not documented

10  enemies and were both on double-cell status at the time defendant Robinette housed them

11  together.  In his declaration, defendant Robinette states that based on these circumstances, he had

12  no reason to believe that plaintiff and inmate Smith could not cell together.  (ECF No. 238-1 at 2.)

13  Based on this evidence, the undersigned finds that defendants met their initial summary judgment

14  burden of demonstrating the absence of a genuine issue of material fact that defendant Robinette

15  did not know that inmate Smith posed a substantial risk of serious harm to plaintiff when he

16  celled them together.  Farmer, 511 U.S. at 837 (the prisoner must show that "the official [knew]

17  of and disregard[ed] an excessive risk to inmate...safety; the official must both be aware of facts

18  from which the inference could be drawn that a substantial risk of serious harm exists, and [the

19  official] must also draw the inference.").

20       In his verified response to defendants' undisputed fact no. 30, plaintiff contends that he

21  and inmate Smith were not compatible because inmate Smith was a prior prison gang leader and a

22  Black supremacist with a violent record in and out of prison.  (ECF No. 283 at 10.)  These

23  allegations are vague and conclusory.  Plaintiff does not describe inmate Smith's violent record

24  nor does he explain why inmate Smith's prior gang leadership or status as a Black supremacist

25  rendered him incompatible with being housed with plaintiff.  See Hansen v. United States, 7 F.3d

26  137, 138 (9th Cir. 1993) (when the non-moving party relies only on its own affidavits to oppose

27  summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create

28  an issue of material fact).  Assuming that plaintiff and inmate Smith were incompatible for these

1   reasons, there is also no evidence that defendant Robinette had knowledge of these reasons.

2           Plaintiff suggests that defendant Robinette knew that inmate Smith posed a substantial

3   risk of serious harm to him for two additional reasons.  First, in his verified second amended

4   complaint, plaintiff alleges that defendant Robinette walked by his cell at some time after

5   plaintiff's cellmate paroled and said, "I have a new cellie for you!"  (ECF No. 16 at 5.)

6           As found above, there is no evidence demonstrating that defendant Robinette knew that

7   inmate Smith posed a substantial risk of serious harm to plaintiff.  For this reason, the

8   undersigned finds that it is not reasonable to infer from defendant Robinette's alleged statement

9   "I have a new cellie for you!" that he knew that inmate Smith posed a substantial risk of serious

10  harm to plaintiff.  See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1065 n.10 (9th

11  Cir.2002) (at summary judgment, a court need not draw all possible inferences in plaintiff's favor,

12  but only all reasonable ones, and a reasonable inference is one based on more than mere

13  speculation, conjecture, or fantasy).

14          In his verified response to defendants' statement of undisputed fact, plaintiff suggests that

15  defendant Robinette knew that inmate Smith posed a risk of harm to him because defendant

16  Robinette refused to allow plaintiff to find a new cellmate.  (ECF No. 283 at 10.)  It is unclear if

17  plaintiff is claiming that he actually asked defendant Robinette for an opportunity to find a new

18  cellmate, which defendant Robinette refused.  The second amended complaint contains no such

19  allegations.

20          Regardless of whether defendant Robinette denied an actual request made by plaintiff to

21  find a new cellmate or made inmate Smith plaintiff's cellmate without consulting plaintiff, the

22  undersigned finds that it is not reasonable to infer from either of these circumstances alone that

23  defendant Robinette knew that inmate Smith posed a substantial risk of serious harm to plaintiff.

24  As stated above, there is no other evidence demonstrating that defendant Robinette knew that

25  inmate Smith posed a substantial risk of serious harm to plaintiff at the time he housed them

26  together.  See Villiarimo v. Aloha Island Air, Inc., 281 F.3d at 1065 n.10.

27          Because there is no evidence demonstrating that defendant Robinette knew that inmate

28  Smith posed a substantial risk of serious harm to plaintiff at the time he housed them together,

1  defendant Robinette should be granted summary judgment as to plaintiff's Eighth Amendment

2  claim.

3      Defendants move for summary judgment as to the retaliation claim against defendant

4  Robinette based on the January 22, 2011 incident on the grounds that there is no evidence that

5  defendant Robinette committed the alleged adverse action, i.e., housing plaintiff with inmate

6  Smith in disregard of a substantial risk of serious risk of harm to plaintiff.  Because there is no

7  evidence demonstrating that defendant Robinette knew that inmate Smith posed a substantial risk

8  of serious harm to plaintiff at the time he housed them together, defendant Robinette did not

9  commit the alleged adverse action.  Accordingly, defendant Robinette should be granted

10 summary judgment as to plaintiff's retaliation claim.

11     Defendants argue that defendant Robinette is entitled to qualified immunity.  Because the

12 undersigned finds that defendant Robinette should be granted summary judgment as to the merits

13 of plaintiff's Eighth Amendment and retaliation claims regarding the January 22, 2011 incident,

14 the undersigned need not address qualified immunity.

15     3.  Discussion:  Defendant Rodriguez

16     Plaintiff alleges that defendant Rodriguez failed to move him away from inmate Smith in

17 violation of the Eighth Amendment and in retaliation for his legal activities.  Defendants move

18 for summary judgment as to plaintiff's Eighth Amendment claim on the grounds that there is no

19 evidence that defendant Rodriguez had foreknowledge of the January 22, 2011 incident.

20     For the following reasons, the undersigned finds that whether defendant Rodriguez

21 disregarded a substantial threat to plaintiff's safety when he denied plaintiff's request for a cell

22 move on January 22, 2011, is disputed.  As found above, whether plaintiff requested a cell move

23 from defendant Rodriguez prior to January 22, 2011, based on his safety concerns regarding

24 inmate Smith is disputed.  Although plaintiff claims that defendant Rodriguez would not allow

25 him to explain why he wanted a cell move on January 22, 2011, plaintiff alleges that he

26 previously requested a cell move from defendant Rodriguez based on threats by inmate Smith.

27 Based on this evidence, defendant Rodriguez's summary judgment as to plaintiff's Eighth

28 Amendment claim should be denied.  See Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1050

1    (9th Cir. 2002) (officers violated the Eighth Amendment if they housed inmate Diesso with

2    inmate Ford knowing that inmate Diesso was a threat to inmate Ford or that he acted out

3    dangerously with cellmates); Farmer v. Brennan, 511 U.S. 825, 843 n. 8 (1994) (prison official

4    cannot escape liability if the evidence showed that he merely refused to verify the underlying

5    facts that he strongly suspected to be true, or declined to confirm inferences of risk that he

6    strongly suspected to exist).[20]

7            The undersigned acknowledges that certain undisputed facts undermine plaintiff's

8    allegations against defendant Rodriguez.  For example, plaintiff failed to submit an emergency

9    appeal requesting a cell move prior to January 22, 2011.  In addition, plaintiff signed a

10   compatibility chrono with inmate Smith, although he claims he signed it to avoid being placed

11   into segregation.  The court cannot make credibility determinations regarding plaintiff based on

12   this evidence.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 255 (on summary judgment, the

13   court cannot decide credibility).  However, plaintiff may have to address this evidence at trial.

14           The undersigned next considers qualified immunity regarding plaintiff's Eighth

15   Amendment claim.  Taking the facts in the light most favorable to plaintiff, the undersigned finds

16   that defendant Rodriguez allegedly violated plaintiff's Eighth Amendment rights by denying

17   plaintiff's request for a cell move on January 22, 2011.  The undersigned also finds that the law

18   was clearly established such that a reasonable officer would know that their conduct, as alleged

19   by plaintiff, violated the Eighth Amendment.  Estate of Ford v. Ramirez-Palmer, supra; Farmer v.

20   Brennan, supra.  Accordingly, defendant Rodriguez is not entitled to qualified immunity as to

21   plaintiff's Eighth Amendment claim.

22           Defendants move for summary judgment as plaintiff's retaliation claim against defendant

23   Rodriguez on the grounds that defendant Rodriguez did not commit the alleged adverse action,

24   i.e., denying plaintiff's January 22, 2011 request for a cell move in knowing disregard of a threat

25   to plaintiff's safety by inmate Smith.  (ECF No. 236-2 at 24.)  In support of this argument,

26   _____

27   [20]   The undersigned takes into consideration that the prison was on a lockdown on January 22,
     2011.  Defendants present no evidence that defendant Rodriguez was prohibited from making a
28   cell change during a lockdown if an inmate communicated a credible threat of harm from his
     cellmate.

1  defendants cite Watison v. Carter, 668 F.3d 1108 (9th Cir. 2012), for the proposition that a

2  retaliation claim requires an adverse action by defendants against the plaintiff.  (Id.)  As discussed

3  above, whether defendant Rodriguez committed the alleged adverse action against plaintiff is

4  disputed.  Accordingly, defendant Rodriguez is not entitled to summary judgment as to plaintiff's

5  retaliation claim on these grounds.

6         The undersigned observes that in his declaration, defendant Rodriguez states that he has

7  "never taken or encouraged any adverse action against inmate Crane because of his litigation

8  activities."  (ECF No. 238-3 at 2 (Rodriguez declaration).)  Defendants do not move for summary

9  judgment as to plaintiff's retaliation claim on the grounds that defendant Rodriguez was not

10  motivated by retaliation when he allegedly took the adverse action against plaintiff.  However,

11  defendant Rodriguez's conclusory statement in his declaration that he never took any adverse

12  action against plaintiff because of his litigation activities does not meet defendant's initial

13  summary judgment burden.  See Aqua Connect v. Code Rebel, LLC, 2013 WL 3820544, at *3

14  (C.D. Cal. July 23, 2013) (a defendant's conclusory denial of wrongdoing, made in self-serving

15  affidavits, fails to satisfy threshold requirements of Rule 56) (citing In re Rogstad, 126 F.3d 1224,

16  1227 (9th Cir. 1997)).

17         Defendants also argue that they are entitled to qualified immunity as to plaintiff's

18  retaliation claim against defendant Rodriguez.  In their discussion of this claim, defendants do not

19  address all of the elements of a retaliation claim, including whether defendant Rodriguez was

20  motivated by retaliation when he denied plaintiff's request for a cell move on January 22, 2011.

21  Because defendants do not address the other elements of plaintiff's retaliation claim, the

22  undersigned cannot determine whether defendant Rodriguez is entitled to qualified immunity.

23  Pearson, 555 U.S. at 238 (undeveloped or disputed material facts preclude application of qualified

24  immunity).

25         For the reasons discussed above, defendant Rodriguez's motion for summary judgment

26  regarding plaintiff's Eighth Amendment and retaliation claims regarding the January 22, 2011

27  incident should be denied.

28  ////

G. Merits of Eighth Amendment Claim Regarding March 1, 2013 Incident:  Defendants Robinette and Davey

1. Disputed and Undisputed Facts

Defendants' undisputed facts nos. 58, 60, 65-92 are directly relevant to plaintiff's claims regarding the March 1, 2013 incident.

*Undisputed Facts*

Undisputed Fact No. 58:  Plaintiff pursued Crane v. McDonald, case No. 2:11-cv-663, against defendant Davey until defendants were granted summary judgment on September 30, 2014. (ECF No. 236-3 at 18; ECF No. 236-4 at 48-49 (order granting summary judgment in case 11-cv-663); ECF No. 283 at 18 (plaintiff's response).)

Undisputed Fact No. 60:  Plaintiff never personally met defendant Davey.  (ECF No. 236-3 at 18; ECF No. 238-11 at 11 (plaintiff's deposition testimony); ECF No. 283 at 19 (plaintiff's response).)

Undisputed Fact No. 65:  On March 1, 2013, defendant Robinette observed plaintiff walking on the yard in ad seg footwear and called plaintiff over to himself and defendant Weeks. (ECF No. 236-3 at 21; ECF No. 238-1 at 2 (Robinette declaration); ECF No. 283 at 21 (plaintiff's response).)

Undisputed Fact No. 66:  On March 1, 2013, defendant Robinette told plaintiff that he could not wear ad seg unit footwear on the yard and that he needed boots.  (ECF No. 236-3 at 21; ECF No. 238-1 at 2 (Robinette declaration); ECF No. 283 at 21 (plaintiff's response).)[21]

Undisputed Fact No. 67:  On March 1, 2013, after defendant Robinette told plaintiff he could not wear ad seg unit footwear on the yard, defendant Weeks provided plaintiff a pair of boots.  (ECF No. 21; ECF No 238-1 at 2 (Robinette declaration); ECF No. 283 at 21 (plaintiff's response).)

Undisputed Fact Nos. 72 and 73:  Following the March 1, 2013 incident involving inmates

---

[21]  In his verified response to defendants' undisputed fact no. 66, plaintiff contends that defendants Robinette and Weeks gave him boots.  (ECF No. 283 at 21.)  Plaintiff alleges that defendant Robinette told him, "You're going to need them!"  (Id.)

Williams and Parker, defendant Weeks secured plaintiff and medical staff arrived.  (ECF No. 236-3 at 3; ECF No. 238-1 at 2 (Robinette declaration); ECF No. 283 at 23 (plaintiff's response).)  Following the March 1, 2013 incident, plaintiff was placed in waist-chains and a C-Spine Collar in case of a head or neck injury.  (ECF No. 236-3 at 3; ECF No. 238-1 at 2 (Robinette declaration); ECF No. 283 at 23 (plaintiff's response).)[22]

Undisputed Fact No. 74:  Following the March 1, 2013 incident, plaintiff was secured to a backboard, placed on a gurney, and escorted off the yard by medical and custody staff.  (ECF No. 236-3 at 23); ECF No. 238-1 at 2 (Robinette declaration); ECF No. 283 at 23 (plaintiff's response).)

Undisputed Fact No. 78:  An incident report was prepared and is consistent with defendant Robinette's account of events on March 1, 2013.  (ECF No. 236-3 at 24; ECF No. 238-13 at 152-271 (incident report); ECF No. 283 at 24 (plaintiff's response).)[23]

Undisputed Fact No. 79:  Plaintiff was interviewed on March 2, 2013, by non-party Lieutenant Leckie regarding the March 1, 2013 incident.   (ECF No. 236-3 at 25; ECF No. 239 at 1 (Leckie declaration); ECF No. 283 at 25 (plaintiff's response).)

Undisputed Fact Nos. 80, 81:  When Lieutenant Leckie asked plaintiff how he received his injuries on March 1, 2013, he attributed them to inmates Williams and Parker and did not implicate any staff.  (ECF No. 236-3 at 25; ECF No. 239 at 2 (Leckie declaration); ECF No. 283 at 25 (plaintiff's response).)  During the interview regarding the March 1, 2013 incident, plaintiff was asked, "Did staff use any force during this incident?" and plaintiff said "No."  Plaintiff was then asked, "No?  Is that correct?", and he responded, "No force."  (ECF No. 236-3 at 25; ECF

---

[22]  Plaintiff does not dispute the facts alleged in defendants' undisputed facts nos. 72 and 73.  (ECF No. 283 at 23.)  However, in his verified response to these undisputed facts, plaintiff contends that defendant Weeks wrapped the medical collar to the attachment so tight that it suffocated him.  (Id.)  Plaintiff contends that he stated, "Please loosen the thing on my neck…I can't breathe."  (Id.)

[23]  In his response to defendants' undisputed fact no. 78, plaintiff contends that defendant Robinette's incident report is a falsified cover-up of the crime he and defendant Weeks committed against plaintiff.  (ECF No. 283 at 24.)  However, plaintiff does not dispute that the incident report is consistent with defendant Robinette's account of the events on March 1, 2013.

1  No. 239 at 2 (Leckie declaration); ECF No. 283 at 25 (plaintiff's response).)[24]

2        Undisputed Fact No. 82:  Prior to the March 1, 2013, incident, plaintiff was not

3  documented as enemies with inmates Williams and Parker.  (ECF No. 236-3 at 26; ECF No. 238-

4  13 at 2 (McConnell declaration); ECF No. 283 at 26 (plaintiff's response).)[25]

5        Undisputed Fact No. 83:  Plaintiff, inmate Williams and inmate Parker signed a

6  compatibility chrono stating that the incident occurred because of a misunderstanding and that

7  despite this incident, all involved inmates state that they can successfully program together, are

8  compatible to live on the same yard and in the same building. (ECF No. 236-3 at 26; 238-13 at

9  273 (compatibility chrono).)[26]

10        Undisputed Fact No. 85:  According to inmates Williams and Parker, the March 1, 2013

11  incident resulted from a dispute over legal work.  (ECF No. 236-3 at 26; ECF No. 238-8 at 2

12  (declaration of Williams); ECF No. 238-9 at 2 (declaration of Parker); ECF No. 283 at 26

13  (plaintiff's response).)[27]

14        Undisputed Fact No. 86:  Following the March 1, 2013 incident, both inmates Williams

15  and Parker received rules violation reports.  (ECF No. 236-3 at 27; ECF No. 238-13 at 275-297

16  (rules violation reports); ECF No. 283 at 27 (plaintiff's response).)

---

17  [24]  In his response to defendants' undisputed facts nos. 80-81, plaintiff does not dispute that he
18  told Lieutenant Leckie that staff did not use force against him on March 1, 2013.  (ECF No. 283
19  at 25.)  Plaintiff contends that the reason he told Lieutenant Leckie that staff did not use force
    against him was because he was afraid of further assaults if he accused defendants Weeks and
20  Robinette of assaulting him.  (Id.)

21  [25]  In his response to defendants' undisputed fact no. 83, plaintiff contends that prior to March 1,
    2013, he had never met either inmate William or inmate Parker.  (ECF No. 283 at 26.)

22
23  [26]  In his response to defendants' undisputed fact no. 84, plaintiff contends that he never signed
    any statement stating that the incident was a misunderstanding because he had never met inmates
24  Williams and Parker before.  (ECF No. 283 at 26.)  Plaintiff does not deny that he signed a
    chrono containing the other statements contained in the chrono, as set forth above.  Plaintiff's
25  signature also appears to be on the compatibility chrono.  For these reasons, the undersigned finds
    that defendants' undisputed fact no. 84 is undisputed.

26
27  [27] In his verified response to defendants' undisputed fact no. 85, plaintiff contends that he had
    never met inmates Parker or Williams before March 1, 2013.  (ECF No. 283 at 26.)  Plaintiff does
28  not dispute that according to inmate Williams and Parker, the March 1, 2013 incident resulted
    from a dispute over legal work.

Undisputed Fact No. 87:  According to statements made in inmate Williams' and inmate Parker's rules violation reports, plaintiff was doing inmate Williams' legal work but refused to get it done.  (ECF No. 236-3 at 27; ECF No. 238-13 at 279 (statement by inmate Williams in rules violation report); ECF No. 238-13 at 292 (statement by inmate Parker in rules violation report); ECF No. 283 at 27 (plaintiff's response).)[28]

Undisputed Fact No. 88:  According to statements made in inmate Williams and inmate Parker's rules violation reports, plaintiff and Williams argued and eventually started fighting. (ECF No. 236-3 at 27; ECF No. 238-13 at 279 (statement by inmate Williams in rules violation report); ECF No. 238-13 at 292 (statement by inmate Parker in rules violation report); ECF No. 283 at 27 (plaintiff's response).)[29]

Undisputed Fact No. 89:  According to statements made in inmate Williams and inmate Parker's rules violation reports, plaintiff attempted to flee, but inmate Parker stepped in and began striking plaintiff.  (ECF No. 236-3 at 28; ECF No. 238-13 at 292 (statement by inmate Parker in rules violation report); ECF No. 283 at 28 (plaintiff's response).)[30]

Undisputed Fact No. 91:  Other than the fact that Crane v. McDonald, 2: 11-cv-663 was active at the time of the March 1, 2013 incident, plaintiff has no direct evidence to support his claim that defendant Davey allowed and/or sanctioned inmate assaults against him because of his litigation activities.  (ECF No. 236-3 at 28; ECF No. 238-11 at 11-13 (plaintiff's deposition testimony); ECF No. 283 at 28 (plaintiff's response).)

////

---

[28]  In his response to defendants' undisputed fact no. 87, plaintiff claims that the statements made by inmates Williams and Parker were false.  (ECF No. 283 at 27.)  However, plaintiff does not deny that inmates Williams and Parker made these statements.  (Id.)

[29]  In his response to defendants' undisputed fact no. 88, plaintiff claims that nothing happened between himself and inmates Williams and Parker prior to the incident.  (ECF No. 283 at 27.) However, plaintiff does not dispute the rules violation reports of inmates Williams and Parker contains statements by both inmates that plaintiff and inmate Williams argued and eventually started fighting.

[30]  In his response to defendants' undisputed fact no. 89, plaintiff does not dispute that statements in the rules violation report of inmate Parker states that plaintiff attempted to flee and inmate Parker stepped in and began striking plaintiff.  (ECF No. 283 at 28.)

1   Undisputed Fact No. 92:  Defendant Davey was no longer employed by HDSP as of May

2   31, 2012, and had no knowledge of the March 1, 2013 incident, no involvement in that incident

3   and no authority over any staff at HDSP.  (ECF No. 236-3 at 28; ECF No. 238-2 at 1-2 (Davey

4   declaration ); ECF No. 283 at 29 (plaintiff's response).)[31]

5   *Disputed Facts*

6   Disputed Facts No. 68-71:  Defendants' undisputed facts nos. 68-71 describes the incident

7   between plaintiff and inmates Williams and Parker.  For the reasons stated herein, the

8   undersigned finds that the facts regarding this incident, as alleged in defendants' undisputed fact

9   nos. 68-71, are largely disputed.

10   In undisputed fact nos. 68, defendants contend that on March 1, 2013, shortly after

11   plaintiff was provided boots, defendant Robinette heard the order to "get down" over the public

12   address system and looked to see inmates Williams and Parker striking plaintiff, who fell to the

13   ground.  (ECF No. 236-3 at 21-22; ECF No. 238-1 at 2 (Robinette declaration).)  In undisputed

14   fact no. 69, defendants contend that on March 1, 2013, after the order to "get down" was issued

15   over the public address system, inmates Williams and Parker separated from plaintiff and entered

16   a prone position approximately fifteen feet away.  (ECF No. 236-3 at 22; ECF No. 238-1 at 2

17   (Robinette declaration).)  In undisputed fact no. 70, defendants contend that staff responded

18   immediately to the March 1, 2013 incident and defendant Robinette joined the line of skirmish as

19   it was already forming.  (ECF No. 236-3 at 22; ECF No. 238-1 at 2 (Robinette declaration).)  In

20   undisputed fact no. 71, defendants contend that following the March 1, 2013, incident, defendants

21   Robinette and Weeks approached plaintiff who was unresponsive to Weeks' verbal commands

22   _____

23   [31] In his verified response to defendants' undisputed fact no. 92, plaintiff contends that defendant
Davey was promoted for his part in overseeing a corrupt group of prison guards who were
24   assaulting numerous prisoners.  (ECF No. 283 at 29.)  Plaintiff contends that the Office of
Inspector General 2015 Special Review regarding HDSP terminated Warden McDonald, who was
defendant Davey's boss.  (Id.)  Plaintiff contends that Warden McDonald did not correct
25   defendant Davey's failure to supervise his officers.  (Id.)  Plaintiff contends that defendant Davey
was sued in a number of cases by prisoners.  (Id.)  The undersigned finds that in his response to
26   defendants' undisputed fact no. 92, plaintiff provides no evidence demonstrating that defendant
Davey had any involvement in the March 1, 2013 incident at HDSP, where defendant Davey had
27   not been employed since May 31, 2012.  The undersigned can find no evidence supporting
plaintiff's claim that defendant Davey was involved in this incident elsewhere in the record.
28

47

1    and appeared to be unconscious.  (ECF No. 236-3 at 22; ECF No. 238-1 at 2 (Robinette

2    declaration).)

3            Plaintiff's response to defendants' undisputed facts nos. 68-71 sets forth a different

4    version of events.  (ECF No. 283 at 21-22.)  Plaintiff cites the verified declarations of inmates

5    Shaunta Ray, Juan Munoz and D. Boutte in support of his response.  (Id.)  For the following

6    reasons, the declaration of inmate Boutte is disregarded.

7            In his declaration, inmate Boutte states that on March 1, 2013, he observed two African

8    American inmates assault plaintiff while defendants Weeks and Robinette watched with approval.

9    (ECF No. 283 at 39.)  In the response to plaintiff's statement of undisputed facts, defendants

10   contend that inmate Boutte does not have personal knowledge regarding the March 1, 2013

11   incident because he was not housed at HDSP on that date.  (ECF No. 302-1 at 25.)  Defendants

12   refer to the declaration of Litigation Coordinator Quam attached to the reply.  (ECF No. 302-2 at

13   2.)  In his declaration, Litigation Coordinator Quam states that he is familiar with and has access

14   to the Strategic Offender Management System ("SOMS"), including inmate bed histories.  (Id. at

15   1-2.)  Litigation Coordinator Quam states that these records are kept in the regular course of

16   business at CDCR and entries into SOMS are made at or near the time of the events recorded by

17   staff with knowledge of those events.  (Id.)  Attached to the declaration of Litigation Coordinator

18   Quam is the bed history of inmate Boutte.  (Id. at 4.)  This bed history shows that inmate Boutte

19   was not housed at HDSP on March 1, 2013.  (Id.)

20           The court may take judicial notice of facts that are "capable of accurate and ready

21   determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R.

22   Evid. 201(b)(2).  The undersigned finds that the accuracy of inmate Boutte's bed history is not

23   subject to reasonable dispute.  Accordingly, the undersigned takes judicial notice of inmate

24   Boutte's bed history record.

25           Because inmate Boutte's bed history record reflects that he was not housed at HDSP on

26   March 1, 2013, inmate Boutte's declaration is disregarded.

27           In his verified declaration, inmate Munoz states that on March 1, 2013, "after a long time

28   of observing" inmates Williams and Parker assault plaintiff, defendant Weeks and other guards

                                                      48

1   began beating plaintiff.  (ECF No. 283 at 37.)

2          In the verified second amended complaint, plaintiff allege that the guards did not sound

3   the alarm until plaintiff had been beaten for a long time.  (ECF No. 16 at 8.)  Plaintiff alleges that

4   once plaintiff was on the ground, defendants Weeks and Robinette and other prison guards

5   handcuffed him behind his back, smashed his face into the ground, dragged his face across the

6   ground and hit him over the head with batons, rendering him unconscious.  (Id.)

7          Based on the conflicting evidence set forth above, the undersigned finds that whether

8   defendants Weeks and Robinette responded immediately to the assault on plaintiff by inmates

9   Williams and Parker is disputed. The undersigned also finds that whether plaintiff was

10  unconscious when defendants Robinette and Weeks approached plaintiff is disputed.

11         Disputed Fact No. 75:  In undisputed fact no. 75, defendants contend that undisputed facts

12  nos. 65-74 were the extent of defendant Robinette's involvement in the March 1, 2013 incident.

13  (ECF No. 236-3 at 23-24.)  Defendants' undisputed facts nos. 72-74 are undisputed.  However, as

14  discussed above, defendants' undisputed facts nos. 68-71 are disputed.  For this reason, the

15  undersigned finds that whether defendant Robinette's involvement, as described in undisputed

16  facts nos. 65-71, was the extent of defendant Robinette's involvement in the March 1, 2013

17  incident is disputed.

18         Disputed Fact No. 76:  In undisputed fact no. 76, defendants contend that at no time did

19  defendant Robinette use any force on plaintiff during the March 1, 2013 incident, and he did not

20  observe any other officers including defendant Weeks, use force on plaintiff.  (ECF No. 236-3 at

21  24; ECF No. 238-1 at 3 (Robinette declaration).)

22         As discussed above, in his verified second amended complaint, plaintiff alleges that

23  defendants Weeks and Robinette used force against plaintiff following the incident involving

24  inmates Parker and Williams.  As discussed above, in his verified declaration, inmate Munoz

25  states that he saw defendants Weeks and other guards use force against plaintiff.  Based on this

26  evidence, the undersigned finds that whether defendant Robinette used force against plaintiff

27  during the March 1, 2013 incident or observed any other officer, including defendant Weeks, use

28  force against plaintiff is disputed.

Disputed Fact No. 77:  In undisputed fact no. 77, defendants contend that defendant Robinette did not encourage inmates Williams and Parker in any way to assault plaintiff, and nor did defendant Robinette hear any other officers, including defendant Weeks, offer such encouragement.  (ECF No. 236-3 at 24; ECF No. 238-1 at 3 (Robinette declaration).)

Plaintiff provided a verified declaration by inmate Shaunta Ray who states that he overheard defendants Weeks and Robinette tell inmates Parker and Williams to assault plaintiff. (ECF No. 283 at 35.)  Inmate Ray states that on March 1, 2013, he observed defendants Weeks and Robinette tell inmates Parker and Williams to, "Get ready to do the favor for them."  (Id.) Inmate Ray states that he heard defendant Weeks say to inmates Parker and Williams, "Crane!" (Id.)  Inmate Ray states that "this appeared to be the call for these inmates to assault [plaintiff]." (Id.)

Based on the conflicting evidence discussed above, the undersigned finds that whether defendant Robinette encouraged inmates Parker and Williams to assault plaintiff or heard any other officers offer such encouragement is disputed.

Disputed Fact No. 84:  In undisputed fact no. 84, defendants contend that inmates Parker and Williams did not conspire with correctional staff against plaintiff and were not acting at the direction of correctional staff.  (ECF No. 236-3 at 26.; ECF No. 238-8 at 2 (declaration of Williams); ECF No. 238-9 at 2 (declaration of Parker).).

In response to undisputed fact no. 84, plaintiff refers to the declaration of inmate Ray who states that he heard defendants Weeks and Robinette give inmates Parker and Williams "the call" to assault plaintiff.  (ECF No. 283 at 35.)

Based on the evidence discussed above, the undersigned finds that whether inmates Parker and Williams conspired with staff against plaintiff and were acting at the direction of staff when they assaulted plaintiff is disputed.

Disputed Fact No. 90:  In undisputed fact no. 90, defendants contend that defendant Robinette did not know that inmates Williams and Parker were going to assault plaintiff on March 1, 2013, and had no reason to know that such an assault would occur.  (ECF No. 236-3 at 28; ECF No. 238-1 at 3 (Robinette declaration).)

As discussed above, plaintiff provided the declaration of inmate Ray who states that he heard defendants Robinette and Weeks discussing the assault on plaintiff with inmates Williams and Parker prior to its occurrence.  (ECF No. 283 at 35.)

Accordingly, the undersigned finds that whether defendant Robinette knew that inmates Williams and Parker were going to assault plaintiff on March 1, 2013, is disputed.

    2.   <u>Discussion—Claims Against Defendant Robinette</u>

Defendants argue that defendant Robinette is entitled to summary judgment as to plaintiff's Eighth Amendment failure-to-protect claim regarding the March 1, 2013 assault by inmates Parker and Williams because inmates Parker and Williams did not conspire with staff against plaintiff.   Defendants contend that the March 1, 2013 incident was a dispute over legal work.

As discussed above, whether defendant Robinette directed inmates Parker and Williams to assault plaintiff is disputed.  Whether the dispute between plaintiff and inmates Parker and Williams was over legal work is also disputed because plaintiff claims he did not know inmates Parker and Williams prior to the incident.  Whether defendant Robinette immediately intervened in the incident between plaintiff and inmates Parker and Williams after it began is disputed.  Based on these disputed facts, the undersigned cannot determine whether defendant Robinette disregarded a substantial risk of serious harm to plaintiff on March 1, 2013.  Accordingly, defendant Robinette should be denied summary judgment as to plaintiff's failure-to-protect claim based on the March 1, 2013 incident.

Defendants argue that defendant Robinette is entitled to summary judgment as to plaintiff's excessive force claim based on the March 1, 2013 incident.  Defendants argue that at no time did defendant Robinette, or any other staff, use force against plaintiff on March 1, 2013, a fact that plaintiff himself conceded during an interview following the incident.

As discussed above, whether defendant Robinette used excessive force against plaintiff on March 1, 2013, is disputed.  For this reason, defendant Robinette should be denied summary judgment as to this claim.

While plaintiff told Lieutenant Leckie that no staff used force against him during the

1    March 1, 2013 incident, plaintiff claims that he made this statement out of fear of further assault.

2    (ECF No. 283 at 25.)  Whether plaintiff's explanation is credible is an issue for the jury to decide.

3    Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

4          Defendants move for summary judgment as to plaintiff's retaliation claim against

5    defendant Robinette on the grounds that defendant Robinette did not take the alleged adverse

6    actions against plaintiff, i.e., failing to protect plaintiff from inmates Parker and Williams and

7    using excessive force against plaintiff.  (ECF No. 236-2 at 26.)  In support of this argument,

8    defendants cite Watison v. Carter, 668 F.3d 1108 (9th Cir. 2012), for the proposition that a

9    retaliation claim requires an adverse action by defendants against the plaintiff.  (Id.)

10         As discussed above, whether defendant Robinette failed to protect plaintiff and used

11    excessive force against plaintiff on March 1, 2013, are disputed facts.  Therefore, the undersigned

12    cannot find that defendant Robinette took no adverse action against plaintiff.  Accordingly,

13    defendant Robinette's motion for summary judgment as to this retaliation claim should be denied.

14         The undersigned observes that in his declaration, defendant Robinette states that he has

15    "never taken or encouraged any adverse action against inmate Crane because of his litigation

16    activities."  (ECF No. 238-1 at 3 (Robinette declaration).)  Defendants do not move for summary

17    judgment as to plaintiff's retaliation claim on the grounds that defendant Robinette was not

18    motivated by retaliation when he allegedly took the adverse actions against plaintiff.  However,

19    defendant Robinette's conclusory statement in his declaration that he never encouraged any

20    adverse action against plaintiff because of his litigation activities would not meet defendant's

21    initial summary judgment burden.  See Aqua Connect v. Code Rebel, LLC, 2013 WL 3820544, at

22    *3 (C.D. Cal. July 23, 2013) (a defendant's conclusory denial of wrongdoing, made in self-

23    serving affidavits, fails to satisfy threshold requirements of Rule 56) (citing In re Rogstad, 126

24    F.3d 1224, 1227 (9th Cir. 1997)).

25         Defendants argue that defendant Robinette is entitled to qualified immunity as to

26    plaintiff's Eighth Amendment and retaliation claims.  Taking the facts in the light most favorable

27    to plaintiff, the undersigned finds that defendant Robinette violated plaintiff's Eighth Amendment

28    rights by encouraging inmates Parker and Williams to assault plaintiff and by using excessive

1    force against plaintiff.  The undersigned also finds that the law was clearly established such that a

2    reasonable officer would know that their conduct, as alleged by plaintiff, violated the Eighth

3    Amendment.  For these reasons, defendant Robinette is not entitled to qualified immunity as to

4    plaintiff's Eighth Amendment claims.

5         As discussed above, defendants move for summary judgment as to plaintiff's retaliation

6    claim only on the grounds that defendant Robinette committed no adverse action.  However, in

7    their discussion of this claim, defendants do not address the other elements of a retaliation claim.

8    Because defendants did not address the other elements of plaintiff's retaliation claim, the

9    undersigned cannot determine whether defendant Robinette is entitled to qualified immunity.

10   Pearson, 555 U.S. at 238 (undeveloped or disputed material facts preclude application of qualified

11   immunity).  Accordingly, defendant Robinette is not entitled to qualified immunity as to

12   plaintiff's retaliation claim.

13        In conclusion, the undersigned recommends that defendant Robinette be denied summary

14   judgment as to plaintiff's Eighth Amendment and retaliation claims based on the March 1, 2013

15   incident.

16        3.   Discussion:  Claim Against Defendant Davey

17        Plaintiff alleges that defendant Davey sanctioned the March 1, 2013 incident in retaliation

18   for plaintiff's legal activities.  Defendants move for summary judgment as to this claim on the

19   grounds that the undisputed evidence demonstrates that defendant Davey was not involved in this

20   incident.

21        As discussed above, defendants' undisputed evidence demonstrates that defendant Davey

22   was no longer employed at HDSP as of May 31, 2012, he had no knowledge of the March 1, 2013

23   incident, he was not involved in that incident and had no authority over any staff at HDSP at that

24   time.  Based on this undisputed evidence demonstrating that defendant Davey was not involved in

25   the March 1, 2013 incident, the undersigned recommends that defendant Davey be granted

26   summary judgment as to plaintiff's claim regarding the March 1, 2013 incident.

27   ////

28   ////

53

1   H.   Calling Plaintiff a Snitch:  Defendants Barton and Rodriguez

2        Plaintiff alleges that defendants Barton and Rodriguez called plaintiff a snitch in violation

3   of the Eighth Amendment and in retaliation for his legal activities.  See Valandingham v.

4   Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989) (deliberately spreading rumor that prisoner is a

5   snitch stated claim under the Eighth Amendment).

6        Defendants move for summary judgment as to these claims on the grounds that they never

7   attempted to label plaintiff a snitch.  In support of this argument, defendants cite undisputed fact

8   no. 96, which cites the declarations of defendants Barton and Rodriguez.  (ECF No. 236-3 at 30

9   (undisputed fact no. 96)).  In their declarations, both defendants Barton and Rodriguez state that

10  they never attempted to label plaintiff as a snitch.  (ECF No. 238-5 at 2 (Barton declaration); ECF

11  No. 23803 at 2 (Rodriguez declaration).)

12       In his verified response to defendants' undisputed fact no. 96, plaintiff contends that

13  defendants labeled him as a snitch.  (ECF No. 283 at 30).  As discussed above, in his verified

14  second amended complaint, plaintiff alleges that defendants Barton and Rodriguez called him a

15  snitch.  (ECF No.  16 at 5.)

16       Whether defendants Barton and Rodriguez called or labeled plaintiff a snitch is a disputed

17  material fact.  Accordingly, defendants Barton and Rodriguez should be denied summary

18  judgment as to this claim.[32]

19  I.   Conspiracy

20       Plaintiff alleges that all of the incidents alleged in the second amended complaint were

21  part of a conspiracy by defendants to retaliate against him for his legal activities.  The

22  undersigned herein considers plaintiff's conspiracy claim only as to those claims and defendants

23  for whom the undersigned recommends that summary judgment be denied:  1) plaintiff's failure-

24  to-protect and retaliation claims against defendants Barton, Probst and Robinette based on the

25  February 5, 2010 incident;[33] 2) plaintiff's failure-to-protect and retaliation claims against

26  _____

27  [32]   Defendants' only argument for summary judgment as to this claim is that they did not label
    plaintiff as a snitch.

28  [33]   As discussed above, plaintiff's failure-to-protect and retaliation claims based on the February

54

1   defendant Rodriguez based on the January 22, 2011 incident; 3) plaintiff's failure-to-protect,

2   excessive force claim and retaliation claims against defendant Robinette based on the March 1,

3   2013 incident; and 4) plaintiff's claim that defendants Barton and Rodriguez called plaintiff a

4   snitch.

5         Defendants move for summary judgment as to plaintiff's conspiracy claim on the grounds

6   that they did not violate plaintiff's constitutional rights.  Defendants also argue that they have no

7   knowledge of any conspiracy against plaintiff to incite other inmates to abuse and assault him

8   based on his litigation activities.

9         Defendants are not entitled to summary judgment as to plaintiff's conspiracy claim on the

10  grounds that they did not violate plaintiff's rights.  As discussed above, whether defendants

11  violated plaintiff's constitutional rights as to the remaining claims is disputed.  Lacey v. Maricopa

12  County, 693 F.3d at 935 (for a conspiracy claim, there must always be an underlying

13  constitutional violation).

14        In support of their argument that they had no knowledge of any conspiracy against

15  plaintiff, defendants cite undisputed fact no. 97.  In undisputed fact no. 97, defendants contend

16  that they had no knowledge of any conspiracy against plaintiff to incite inmates to abuse and

17  assault him based on his litigation activities and have never taken or encouraged any adverse

18  action against plaintiff because of his legal activities.  (ECF No. 236-3 at 30).  Undisputed fact

19  no. 97 refers to the declarations of defendants Barton, Probst, Robinette and Rodriguez which

20  contain the same statement.  (ECF No. 238-1 at 3 (Robinette declaration); ECF No. 238-3 at 2

21  (Rodriguez declaration); ECF No. 238-5 at 2 (Barton declaration); ECF No. 238-4 at 2 (Probst

22  declaration).)

23        As discussed above, defendants' conclusory statements in their declarations that they

24  never took or encouraged any adverse actions against plaintiff does not meet defendant's initial

25  summary judgment burden.  See Aqua Connect v. Code Rebel, LLC, 2013 WL 3820544, at *3

26  (C.D. Cal. July 23, 2013) (a defendant's conclusory denial of wrongdoing, made in self-serving

27

28  5, 2010 incident are timely only if plaintiff can demonstrate that they are part of the alleged
    conspiracy.

1    affidavits, fails to satisfy threshold requirements of Rule 56) (citing In re Rogstad, 126 F.3d 1224,

2    1227 (9th Cir. 1997)).

3           Plaintiff alleges that all defendants conspired to retaliate against him for his legal

4    activities.  In their declarations, defendants merely state that they had no knowledge of any

5    conspiracy to retaliate against plaintiff.  Defendants do not, for example, address whether they

6    communicated with each other regarding plaintiff's legal activities and/or any of the alleged

7    adverse actions.  Defendants' declarations do not specifically address plaintiff's conspiracy claim.

8    Defendants' conclusory statements in their declarations that they have no knowledge of any

9    conspiracy to retaliate against plaintiff based on his litigation activities do not meet defendants'

10   initial summary judgment burden.  See Aqua Connect v. Code Rebel, LLC, supra; In re Rogstad,

11   supra.[34]  Accordingly, defendants are not entitled to summary judgment as to plaintiff's

12   conspiracy claim.

13          J.    Conclusion

14          For the reasons discussed above, the undersigned recommends that the motion for

15   summary judgment on behalf of defendants Davey, Rodriguez, Probst, Barton and Rodriguez be

16   granted as to the following claims:  1) plaintiff's claims regarding the January 16, 2013 incident

17   based on plaintiff's failure to exhaust administrative remedies (including the related claim against

18

19   [34] In Betancourt v. Rhodes, 2010 WL 672756 (D. Idaho Feb. 20, 2010), the district court found
     that the defendant prosecutors proffered sufficient declarations to meet their initial summary
20   judgment burden of demonstrating that no conspiracy existed among them.  Id. at 10.  In their
     declarations, the prosecutors stated that they had no role in the autopsy or testing of the victim's
21   body fluids, and that they have no knowledge that the Canyon County Prosecutor's Office had
     any "role in how the autopsy was performed, the body fluids collected, or what happened to the
22   body fluids following the autopsy." Id. at *9.  The prosecutors stated that they did not suppress or
     fabricate evidence, nor did anyone request that they do so.  Id.  In Adickes v. S.H. Kress & Co.,
23   398 U.S. 144, 157 (1970), the Supreme Court held, with respect to a claim that defendant and a
     third party conspired to deprive plaintiff of her civil rights, that defendant seeking summary
24   judgment did not carry its initial burden because of its failure to foreclose the possibility of a
     conspiracy.  In Adickes, the Supreme Court reviewed statements made in depositions made by a
25   store manager and plaintiff and affidavits from the chief of police and two law enforcement
     officers.  Id. at 154-56.  While plaintiff's conspiracy claim in the instant action is not as
26   complicated as the conspiracy claims alleged in Betancourt and Adickes, these cases instruct that
     defendants must do more than submit affidavits making conclusory assertions to meet their
27   summary judgment burden.

28

1    defendant Davey); 2) plaintiff's claims against defendant Robinette regarding the January 22,

2    2011 incident as without merit; and 3) plaintiff's claims against defendant Davey regarding the

3    March 1, 2013 incident as without merit.

4         The undersigned recommends that defendants' summary judgment motion be denied as to

5    the following claims:  1) plaintiff's Eighth Amendment failure-to-protect and retaliation claims

6    against defendant Rodriguez based on the January 22, 2011 incident; 2) plaintiff's Eighth

7    Amendment failure-to-protect and excessive force and retaliation claims against defendant

8    Robinette based on the March 1, 2013 incident; 3) plaintiff's Eighth Amendment and retaliation

9    claims against defendants Barton and Rodriguez based on their allegedly calling plaintiff a snitch;

10   and 4) plaintiff's claim alleging that defendants Barton, Robinette, Probst and Rodriguez

11   conspired to retaliate against plaintiff for his legal activities based on the February 5, 2010

12   incident involving inmate Washington, the January 22, 2011 incident involving inmate Smith and

13   the March 1, 2013 incident, and by defendants Barton and Rodriguez allegedly calling plaintiff a

14   snitch.

15       VI.    Motion for Summary Judgment on Behalf of Defendant Weeks (ECF No. 240)

16            A.   Declaration of Inmate Boutte

17         Plaintiff attached to his response to defendant's statement of undisputed facts the

18   declaration of inmate Donald Boutte dated July 25, 2021.  (ECF No. 286 at 20.)  Inmate Boutte

19   states that on March 1, 2013, he was housed at HDSP.  (Id.)  Inmate Boutte states that he

20   observed defendants Weeks and Robinette watch two inmates attack plaintiff before they finally

21   went to the scene.  (Id.)  Inmate Boutte states that he then saw defendants Weeks and Robinette

22   strike and pummel plaintiff as he lay on the ground.  (Id.)

23         In the reply to plaintiff's opposition, defendant Weeks contends that the declaration of

24   inmate Boutte is false because inmate Boutte was not housed at HDSP on March 1, 2013.  (ECF

25   No. 311-2.)  Defendant Weeks requests that the court take judicial notice of inmate Boutte's bed

26   history, attached to the reply, demonstrating that inmate Boutte was not housed at HDSP on

27   March 2013.  (Id. at 8.)

28         The court may take judicial notice of facts that are "capable of accurate and ready

57

1   determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R.

2   Evid. 201(b)(2).  The undersigned finds that the accuracy of inmate Boutte's bed history records

3   is not subject to reasonable dispute.  Accordingly, the request for judicial notice is granted.

4       Because inmate Boutte's bed history records reflect that he was not housed at HDSP on

5   March 1, 2013, inmate Boutte's declaration is disregarded.

6       In the reply, defendant Weeks argues that plaintiff should be sanctioned for filing a false

7   affidavit pursuant to Federal Rule of Civil Procedure 56(h).  Rule 56(g) provides,

8           If satisfied that an affidavit or declaration under this rule is
            submitted in bad faith or solely for delay, the court—after notice
9           and a reasonable time to respond—may order the submitting party
            to pay the other party the reasonable expenses, including attorneys'
10          fees, it incurred as a result.  An offending party, or an attorney, may
            also be held in contempt or subjected to other appropriate sanctions.
11

12  Fed. R. Civ. P. 56(h).

13      In the reply, defendant Weeks argues that the inmate Boutte's affidavit is a completely

14  fraudulent invention.  (ECF No. 311 at 3.)  Defendant argues that plaintiff acted in bad faith in

15  submitting the Boutte declaration as a means to avoid an unfavorable summary judgment.  (Id.)

16  Defendant requests that the court sanction plaintiff for filing this false affidavit by granting

17  defendant's summary judgment motion.  (Id.)

18      On May 26, 2022, plaintiff filed a motion for leave to file a response to defendant Weeks'

19  request for sanctions regarding inmate Boutte's declaration.  (ECF No. 306.)  On May 26, 2022,

20  plaintiff filed a verified response to the request for sanctions.  (ECF No. 307.)  Good cause

21  appearing, plaintiff's request for leave to file the response is granted.

22      In his verified response, plaintiff claims that on July 25, 2021, "newly discovered witness"

23  Boutte wrote a handwritten declaration.  (Id. at 1.)  Plaintiff contends that he (plaintiff) was

24  present when inmate Boutte "made spontaneous exclamation" which he later wrote down.  (Id. at

25  2.)  This led plaintiff to believe that inmate Boutte was present when plaintiff was assaulted at

26  HDSP on March 1, 2013.  (Id.)

27      In his verified response, plaintiff appears to claim that inmate Boutte voluntarily told

28  plaintiff that he witnessed the March 1, 2013 incident.  Based on these circumstances, plaintiff

1   claims that he believed that inmate Boutte witnessed the incident.  Based on these statements, the

2   undersigned cannot find that plaintiff submitted inmate Boutte's declaration in bad faith or solely

3   for delay.  Accordingly, defendant Weeks' motion for sanctions is denied without prejudice.[35]

4          B.  Defendants' Evidence

5          In support of the summary judgment motion, defendant Weeks submitted a separate

6   statement of undisputed facts.  (ECF No. 240-2.)  Plaintiff filed a response to defendant's

7   statement of undisputed facts.  (ECF No. 286.)  In the reply, defendant Weeks argues that

8   plaintiff's response to his statement of undisputed facts does not adequately address the

9   undisputed facts.  (ECF No. 311 at 4.)  Defendant argues that plaintiff's conclusory responses

10  must render the undisputed facts undisputed under the Federal Rules of Civil Procedure.  (Id.)

11         The undersigned agrees with defendant that plaintiff failed to adequately address several

12  of defendant's 56 undisputed facts.  Federal Rule of Civil Procedure 56(e)(2) provides that if a

13  party fails to properly support an assertion of fact or fails to properly address another party's

14  assertion of fact as required by Rule 56(c), the court may consider the fact undisputed for

15  purposes of the motion.  However, in light of the Ninth Circuit's directive that a document filed

16  pro se be construed liberally, the undersigned shall strive to resolve defendant's summary

17  judgment motion on the merits.  Estelle v. Gamble, 429 U.S. 97, 106 (1976) (document filed pro

18  se is "to be liberally construed"); Erickson v. Pardus, 551 U.S. 89, 94 (2007); Fed. R. Civ. P. 8(f)

19  ("All pleadings shall be so construed as to do substantial justice.").

20         Accordingly, the undersigned declines to find defendant's undisputed facts undisputed to

21  the extent they are not adequately opposed by plaintiff in his response.  Instead, the undersigned

22  herein sets forth defendant's version of events, as contained in the evidence submitted in support

23  of the summary judgment motion.  The undersigned then sets forth plaintiff's version of events,

24  based on plaintiff's admissible evidence.

25  ////

26

27  [35]  The undersigned is skeptical regarding plaintiff's claim that he did not know that inmate
    Boutte was not housed at HDSP on March 1, 2013.  However, based on the current record, the
28  undersigned cannot find that plaintiff knowingly submitted a false declaration.

*Defendant's Version of Events*

On Friday, March 1, 2013, defendant Weeks was on duty at HDSP working a shift of 0600-1400.  (ECF No. 240-4 at 5 (Weeks' declaration).)  As defendant Weeks supervised inmates on the exercise yard, plaintiff was observed in the yard wearing inappropriate footwear from ad seg.  (Id.)  Defendant Robinette informed plaintiff that he needed to wear boots in the yard, and not the ad seg footwear.  (Id.)  Defendant Weeks provided plaintiff with boots.  (Id.)

On March 1, 2013, at 1100 hours, Officer Bennett was working his assigned post as B-observation officer.  (ECF No. 240-4 at 14 (Bennett declaration).)

At approximately 1110 hours, while continuing to supervise inmates outside in the Facility B exercise yard, defendant Weeks observed inmate Williams and inmate Parker punching plaintiff with their fists in his face and head.  (ECF No. 240-4 at 5 (Weeks' declaration).)

The location of the fight occurred along the track next to the fence between buildings 2 and 3.  (Id. at 6.)  Defendant Weeks was located on the other side of the yard when he first observed the fight.  (Id.)  There are typically 100-200 inmates on the exercise yard.  (Id.)  The presence of officers on the yard is to avert inmate disturbances, and to watch for illegal activity.  (Id.)

Yard Officer Bennett, who was positioned at the observation tower, gave all the inmates in the yard the order to "get down," via the public address system.  (ECF No. 240-4 at 15 (Bennett declaration).)  Using a state radio, defendant Weeks called a "Code 1, Bravo Yard, 2 on 1 in front of 2 block."  (ECF No. 240-4 at 6 (Weeks' declaration).)  As a result of this radio alert, multiple officers responded to the yard.  (Id.)

Inmates Walker and Parker chased plaintiff from the track area out to the dirt area at the corner of building B2, behind the handball court.  (Id.)  Defendant Weeks responded across the yard toward the incident, along with other responding staff.  (Id.)

Officer Bennett observed inmate Williams stand in close proximity to inmate Parker.  (ECF No. 240-4 at 16 (Bennett declaration).)  Both inmate Williams and inmate Parker were moving forward in tandem toward plaintiff, who appeared to be dazed and confused.  (Id.)  Plaintiff had his head down and hands in the air in an apparent attempt to protect himself from

any further harm.  (Id.)  Officer Bennett then saw inmate Williams step forward and strike plaintiff with his fist to plaintiff's lower facial area.  (Id.)  Plaintiff's body went limp and he fell to the ground, striking his face on the hard-surface dirt area.  (Id.)  Plaintiff lay motionless and did not move.  (Id.)

Defendant Weeks also observed inmate Williams punch plaintiff with his fist, striking plaintiff on the left side of his head, causing plaintiff to fall to the ground.  (ECF No. 240-4 at 6 (Weeks' declaration).)

Again using the public address system, Officer Bennett gave another lawful order to "get down," which produced negative results.  (ECF No. 240-4 at 16 (Bennett declaration).)  Officer Bennett observed inmates Williams and Parker refuse to obey the order without delay, by stopping their actions, and in a nonchalant manner, turned around and slowly walked back to the table area and lay face down on the concrete pad supporting the tables.  (Id.)

Defendant Weeks observed inmates Williams and Parker move away from plaintiff about 15 feet, to the tables between buildings no. 2 and no. 3 on the yard.  (ECF No. 240-4 at 6 (Weeks' declaration).)  Defendant Weeks observed inmates Williams and Parker enter a prone position.  (Id.)

A skirmish line is a method used to secure the prison yard in the event of an inmate fight.  (Id.)  This involves forming a line of officers to physically separate and confine the involved inmates from the rest of the inmate population.  (Id.)  After defendant Weeks called the Code 1 on his radio, staff and defendant Weeks formed a skirmish line facing building B2 and the tables.  (Id.)  The skirmish line moved forward to secure the area.  (Id.)  Defendant Robinette also joined the skirmish line.  (ECF No. 240-5 at 5 (Robinette declaration).)

On March 1, 2013, Sergeant Shaver was assigned to B Yard Sergeant Post.  (ECF No. 240-4 at 26) (staff incident report).)  Sergeant Shaver responded from the program area to a code one announced over the institutional radio.  (Id.)  Sergeant Shaver assigned defendants Weeks and Robinette to restrain plaintiff.  (ECF No. 240-4 at 6 (Weeks' declaration).)  Defendants Weeks and Robinette approached plaintiff who was lying on his stomach.  (Id.)  Plaintiff's face was bloodied.  (Id.)  Plaintiff did not respond to defendant Weeks' verbal commands and

1   appeared to be unconscious.  (Id.)  Defendant Weeks secured plaintiff in handcuffs while

2   defendant Robinette provided security.  (Id.)

3       Officer Bennett observed Officer Gray handcuff inmate Williams, while Officer Fannon

4   stood by as cover.  (ECF No. 240-4 at 16 (Bennett declaration).)  Officer Bennett observed

5   Officer Paez handcuff inmate Parker, while Officer Barnes stood by as cover.  (Id.)  Officer

6   Bennett saw defendant Weeks handcuff plaintiff while defendant Robinette stood by as cover.

7   (Id.)

8       Officer Bennett did not observe any force used by custody staff during this incident.  (Id.

9   at 17.)  Officer Bennett did not observe any custody staff utilize a baton on plaintiff.  (Id.)

10  Officer Bennett did not observe defendant Weeks strike plaintiff.  (Id.)

11      Medical staff arrived and placed C-spine collar on plaintiff.  (ECF No. 240-4 at 7 (Weeks'

12  declaration).)  Defendant Weeks transferred plaintiff's hands from handcuffs and onto waist chain

13  cuffs.  (Id.)  Plaintiff was secured to a backboard and lifted onto a gurney.  (Id.)

14      Officer Bennett observed Code 2 responders (A yard staff) walk onto the yard and connect

15  with the already-in-place skirmish line.  (ECF No. 240-4 at 16.)  Officer Bennett then observed

16  Investigative Service Unit Staff Members arrive and work to gather evidence.  (Id.)  Officer

17  Dekens then provided escort as plaintiff was wheeled off the yard to an awaiting Medical

18  Transport Van.  (Id.)

19      According to plaintiff's medical records, plaintiff told medical staff at 1130 after the

20  incident that "2 black guys attacked me."  (Id. at 23 (medical records).)

21      Defendant Weeks prepared a CDCR form 837 Incident Report on March 1, 2013, which

22  contains an accurate report of his observations of the inmate attack on that date.  (ECF No. 240-4

23  at 7 (Weeks' declaration ).)  After the incident, photos and other evidence were collected by

24  Investigative Services ("ISU") officers.  (Id.)

25      In his declaration submitted in support of the summary judgment motion, defendant

26  Weeks states that at no time did he use unreasonable or unnecessary force on plaintiff.  (Id.)

27  Defendant Weeks states that his contact with plaintiff on March 1, 2013, was limited to securing

28  plaintiff in handcuffs as the medical staff arrived, and then transferring him to waist-chains before

he was placed on a backboard and positioned on the gurney.  (Id.)  Defendant Weeks states that he did not transport plaintiff to the Correctional Treatment Center/Treatment Triage Area.  (Id.)

In his declaration, defendant Weeks states that he did not ask inmate Williams or inmate Parker to do him a "favor" on the yard, prior to their attack on plaintiff.  (Id.)  Defendant Weeks did not hear defendant Robinette nor any other correctional officer ask inmate Williams or inmate Parker to do a "favor" prior to the attack on plaintiff.  (Id.)  Defendant Weeks did not encourage or suggest to any inmate to assault plaintiff.  (Id.)  Defendant Weeks did not hear any other officers encourage or suggest to inmates plaintiff should be assaulted.  (Id.)  Inmates Parker and Williams did not owe defendant Weeks any "favors."  (Id.)

Prior to the March 1, 2013, defendant Weeks had not been named as a defendant in any lawsuit filed by plaintiff.  (Id.)  Prior to March 1, 2013, defendant Weeks had not been a subject of an inmate appeal filed by plaintiff.  (Id.)  Defendant Weeks had never had any conflict with plaintiff before or during the incident on March 1, 2013.  (Id.)  At no time has defendant Weeks allowed and/or sanctioned any attack on plaintiff.  (Id.)  Defendant Weeks did not know that inmates Williams and Parker were going to assault plaintiff and he had no reason to believe that such an assault would occur.  (Id.)

As of September 2019, defendant Weeks has a state issued expandable baton in his utility belt.  (Id.)  Defendant Weeks has been issued the expandable baton by CDCR in the course of his employment for well over ten years.  (Id.)  Defendant Weeks receives annual training on the use of the baton in the scope of his employment.  (Id.)  Defendant Weeks has been employed in corrections for 20 years.  (Id.)  Aside from this mandatory training, defendant Weeks has never used his expandable baton.  (d.)  Defendant Weeks did not remove his expandable baton on March 1, 2013.  (Id.)  Defendant Weeks did not strike plaintiff with a baton.  (Id. at 7-8.)  Defendant Weeks did not strike plaintiff with his hands or any other object.  (Id. at 8.)  Defendant Weeks did not witness defendant Robinette or any other officer assault plaintiff at any time.  (Id.)  Based on his personal observations in the prison yard, defendant Weeks states that no staff used force on plaintiff on March 1, 2013.  (Id.)

In his declaration, defendant Weeks states that he did not conspire with anyone, and nor

1  did he take adverse action against plaintiff because of his litigation activities, for any reason.  (Id.)

2  At his deposition, plaintiff testified that he could not recall defendant Weeks ever making

3  comments directly to him suggesting that he was retaliating against plaintiff for anything.  (ECF

4  No. 240-4 at 55-56.)  Plaintiff testified, "I never had a conflict with this man.  I stayed away from

5  him."  (Id. at 56.)  At his deposition, plaintiff testified that prior to March 1, 2013, he filed no

6  staff complaints against defendant Weeks.  (Id. at 48-49.)  At his deposition, plaintiff testified that

7  prior to March 1, 2013, he filed no lawsuits against defendant Weeks.  (Id. at 49.)

8  Defendant Weeks was not reprimanded as a result of his actions in connection with the

9  March 1, 2013 incident.  (Id. at 8 (Weeks' declaration).)  There were no personnel actions taken

10  against defendant Weeks in relation to the March 1, 2013, incident.  (Id.)

11  The CDCR Report of Findings concurred with by the Associate Warden on March 13,

12  2013 concludes:

13
14
15
16
17
> Based on the video recorded interview with Inmate Crane, a review
> of the CDCR 7219 Medical Report of Injury, and a review of
> Staff's 837-C reports, it is apparent that inmate Crane's injuries are
> a result of the Battery by Inmates Williams and Parker.  Further,
> inmate Crane did not make any allegations of unnecessary or
> excessive use of force or intention to file an appeal.  Staff did not
> report using any force during this incident and the injuries are
> consistent with the reported battery by inmates Williams and
> Parker.  Therefore, I recommend no further action.

18

19  (Id. at 25 (report of findings).)

20  Inmates Parker and Williams both received Rules Violation Reports for battery on

21  plaintiff.  (Id. at 30-45 (rules violation reports).)  Inmates Parker and Williams stated under oath

22  that they did not conspire with correctional staff against plaintiff and they were not acting at the

23  direction of correctional staff on March 1, 2013; the March 1, 2013 incident resulted from a

24  dispute over legal work.  (ECF No. 250-5 at 8-12 (declarations of inmates Parker and Williams).)

25  On March 2, 2013, Lieutenant Leckie interviewed plaintiff based on the March 1, 2013

26  incident.  (ECF No. 240-4 at 60-71) (transcript from interview).)  Plaintiff was not placed under

27  oath during this interview.

28  During the interview, Lieutenant Leckie asked plaintiff how he received his injuries and

1    plaintiff stated that two inmates assaulted him.  (Id. at 66.)  Plaintiff stated,

2          I was walking the track, and Weeks and Robinette called me over
3          for boot—for to get boots, right?  They gave me some boots over
           there in front of the law library.  I put those on and walked half a
4          lap and basically got by the pull up bars.  These two guys just got
           off the bars and started punching me.

5    (Id.)

6          During the interview, plaintiff stated that staff did not use force during the incident.  (Id. at

7    7-8.)  During the interview, plaintiff stated that maybe five staff were present during the incident.

8    (Id. at 8.)  Plaintiff stated, "They—I couldn't see.  I was really in a –I was really kind of out of it."

9    (Id.)  Plaintiff stated that during the incident, he lost consciousness for one minute.  (Id. at 65.)

10         During the interview, plaintiff stated that he could not identify any staff members who

11   were present during the incident because "I was down in the dirt like that.  They told me go get

12   down."   (Id. at 8.)

13         At his deposition, plaintiff testified that he did not recall seeing his purported witness

14   inmate Lopez on the yard on the day of the incident.  (Id. at 53.)  At his deposition, plaintiff

15   testified that he did not recall seeing his purported witness inmate Shanta Ray on the yard the day

16   of the incident.  (Id. at 51.)  At his deposition, plaintiff testified that he did not see defendant

17   Weeks telling inmates Parker and Williams to assault plaintiff.  (Id. at 54.)

18         C.   Plaintiff's Opposition

19         Plaintiff's version of events is contained in his verified response to defendant's statement

20   of undisputed facts, the verified declarations attached to his response to defendant's statement of

21   undisputed facts and his verified second amended complaint.

22         In his verified declaration, inmate Shaunta Ray states that on March 1, 2013, he observed

23   defendants Weeks and Robinette give inmates Parker and Williams "the call" to assault plaintiff.

24   (ECF No. 286 at 16.)  Inmate Ray states that he heard defendants Weeks and Robinette tell

25   inmates Parker and Williams to "get ready to do the favor" they owed to defendants.  (Id.)

26   Inmate Ray states that he heard defendant Weeks say to inmates Parker and Williams, "Crane!"

27   (Id.)  Inmate Ray states that he next observed inmates Parker and Williams attack plaintiff.  (Id.)

28         In his verified declaration, inmate Juan Munoz states that on March 1, 2013, after

observing two African American inmates beat plaintiff for "a long time," he saw defendant

Weeks and other guard beating plaintiff while plaintiff was face down and prone on the ground.

(Id. at 18.)  Inmate Munoz saw defendant Weeks beat plaintiff on the back of his head with a

baton.  (Id.)  Inmate Munoz states that no prison official ever asked him about this incident.  (Id.)

     As discussed above, in his verified second amended complaint, plaintiff alleges that on

March 1, 2013, when defendants Weeks and Robinette gave plaintiff boots in exchange for his

shoes, defendant Robinette said, "You're going to need them!"  (ECF No. 16 at 8.)  Plaintiff

walked a half lap and was then assaulted by inmates Parker and Williams.  (Id.)  Plaintiff had

never met these inmates before.  (Id.)  The guards did not sound the alarm until plaintiff had been

beaten for a long time.  (Id.)  Defendants Robinette and Weeks came running and ordered

plaintiff to get down while inmates Parker and Weeks were standing.  (Id.)  Once plaintiff was on

the ground, defendants Weeks and Robinette and other guards handcuffed plaintiff behind his

back, smashed his face into the ground, dragged his face across the ground and hit him on the

heads with batons.  (Id.)

    D.  Discussion

     In discussing defendant Weeks' summary judgment motion, the undersigned refers to the

relevant legal standards set forth above in the section addressing the summary judgment motion

filed by defendants Barton, etc.

     As discussed above, plaintiff raises four claims against defendant Weeks:  1) excessive

force in violation of the Eighth Amendment based on the March 1, 2013 incident; 2) failure-to-

protect in violation of the Eighth Amendment based on the March 1, 2013 incident; 3) retaliation

in violation of the First Amendment based on the March 1, 2013 incident; and 4) conspiracy.

     Defendant Weeks' summary judgment motion addresses only plaintiff's excessive force

and conspiracy claims.  Accordingly, the undersigned addresses only these two claims in these

findings and recommendations.

     The undersigned observes that defendant Weeks' summary judgment includes evidence

relevant to plaintiff's retaliation and failure-to-protect claims.  However, defendant does not

specifically address these claims in the points and authorities and nor does he cite the legal

1    standards for these claims.

2        1.  Excessive Force

3        Defendant Weeks moves for summary judgment on the grounds that plaintiff's version of

4    events is inconsistent, implausible and contradicted by the record.  Citing defendant's undisputed

5    facts nos. 18 and 48, defendant argues that plaintiff's claims of excessive force are implausible

6    because plaintiff was knocked unconscious.  (ECF No. 240-3 at 14.)  Defendant cites his own

7    declaration where he stated that when he first approached plaintiff, plaintiff was lying on his

8    stomach, he did not respond to verbal commands and appeared to be unconscious.  (ECF No. 240-

9    4 at 5.)  Defendant also contends that during Lieutenant Leckie's March 2, 2013 interview with

10   plaintiff, plaintiff told Lieutenant Leckie that staff did not use force against him on March 1,

11   2013.  (ECF No. 240-2 at 12.)  Defendant cites the transcript from this interview.  (Id.; ECF No.

12   240-4 at 60-70.)

13       Defendant appears to suggest that plaintiff could not personally know whether defendant

14   assaulted him because plaintiff was unconscious when defendant arrived at the scene.  However,

15   in his verified second amended complaint, plaintiff alleges that he lost consciousness after

16   defendant beat him with the baton.  Moreover, plaintiff submitted a declaration from inmate

17   Munoz who states that he witnessed defendant assault plaintiff.  Therefore, whether defendant

18   Weeks assaulted plaintiff and whether plaintiff was conscious when the alleged assault occurred

19   are disputed facts.

20       In his verified response to defendant's undisputed facts, plaintiff states that he told

21   Lieutenant Leckie that staff did not use force against him on March 1, 2013, because

22   Lieutenant Leckie was "one more criminal guard" and plaintiff did not trust Leckie.  (ECF No.

23   286 at 11-12.)  The undersigned cannot assess the credibility of plaintiff's explanation regarding

24   why he told defendant Leckie that no staff used against force against him on March 1, 2013.

25   Anderson v. Liberty Lobby, Inc., 477 U.S. at 255 (on summary judgment, the court cannot decide

26   credibility).

27       In the summary judgment motion, defendant also argues that the credibility of plaintiff's

28   claims against defendant Weeks are undermined by plaintiff's fluctuating accounts.  (ECF No.

1  240-3 at 14.)  Defendant argues that in his original complaint, plaintiff alleged that defendant

2  Robinette ordered inmates Parker and Williams to beat plaintiff, and later defendant Robinette

3  and other guards beat plaintiff.  (Id.)  Defendant argues that "[b]y the operative second amended

4  complaint," plaintiff included defendants Weeks in his allegations.  (Id.)

5         While plaintiff did not name defendant Weeks as a defendant in the original complaint,

6  plaintiff named defendant Weeks as a defendant in the first amended complaint.  (ECF No. 12.)

7  In the first amended complaint, plaintiff alleged that defendants Weeks and Robinette ordered

8  inmates Williams and Parker to assault him.  (Id. at 7.)  Plaintiff also alleged that after the assault

9  by inmates Williams and Parker, he was assaulted by defendants Weeks, Robinette and other

10  guards, who hit him on the head with batons.  (Id. at 8.)  Whether plaintiff's failure to name

11  defendant Weeks as a defendant in the original complaint undermines plaintiff's credibility is an

12  issue for the jury.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 255 (on summary judgment, the

13  court cannot decide credibility).

14         Defendant also argues that the declaration of plaintiff's inmate witness, Shaunta Ray, is

15  not credible, because plaintiff testified at his deposition that he did not see inmate Ray on the yard

16  on March 1, 2013.  (ECF No. 240-3 at 17; ECF No. 240-4 at 51.)  The undersigned does not

17  understand how plaintiff's failure to see inmate Ray on the exercise yard on March 1, 2013,

18  necessarily impacts the credibility of inmate Ray's statements in his declaration.  In any event, the

19  impact of plaintiff's failure to see inmate Ray on the yard on March 1, 2013, is for the jury to

20  decide.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 255 (on summary judgment, the court

21  cannot decide credibility).[36]

22         Defendant further argues that plaintiff's claims are implausible because they do not make

23  logical sense.  (ECF No. 240-3 at 17.)  Defendant argues that it is undisputed that defendants

24  Weeks responded to the assault on plaintiff by inmates Williams and Parker by calling a "Code 1"

25  on his radio to request assistance from other officers to break up the fight.  (Id.)  Defendant

26  _____

27  [36]  Defendant also argues that plaintiff testified at his deposition that he did not see inmate
witness Joseph Lopez on the yard on March 1, 2013.  (ECF No. 240-3 at 17.)  Plaintiff did not
submit a declaration by inmate Joseph Lopez.  For this reason, the undersigned does not address

28  defendant's arguments challenging the credibility of inmate Lopez.

1    argues that it is undisputed that a skirmish line of officers formed to secure the area.  (Id.)

2    Defendant argues that plaintiff would "then have the Court believe his farcical account that

3    defendant Weeks had not only first 'set up' this inmate attack by Parker and Williams, but that he

4    then proceeded to knock [plaintiff] unconscious himself with his baton as other staff and inmates

5    looked on."  (Id.)

6       The undersigned finds that plaintiff presented sufficient evidence to create a dispute

7    regarding whether defendant Weeks used excessive force against him, including hitting plaintiff

8    with his baton.  Plaintiff presented the declaration of inmate Munoz stating that he observed

9    defendant Weeks assault plaintiff.  Plaintiff alleges in the verified second amended complaint that

10   defendant Weeks assaulted him.  Plaintiff's version of events, based on the evidence presented, is

11   not rendered unbelievable by defendant's evidence.

12       Citing Scott v. Harris, 550 U.S. 372, 380 (2007), and Alston v. County of Sacramento,

13   2020 WL 6801941 (E.D. Cal. Nov. 19, 2020), findings and recommendations adopted in full at

14   2020 WL 7365025, defendant argues that the court should adopt his version of the facts because

15   plaintiff's version of events is blatantly contradicted by the record, so that no reasonable jury

16   could believe it.  (ECF No. 240-3 at 14).

17       In Alston v. County of Sacramento, the plaintiff alleged that the defendant used excessive

18   force against him while he was housed at the Sacramento County Jail.  2020 WL 6801941, at *1.

19   In Alston, the plaintiff's version of events was "utterly discredited by the video recording that no

20   reasonable jury could believe" plaintiff's version of events.  Id.at * 5.  The instant case is

21   distinguished from Alston because, here, there is no video evidence contradicting plaintiff's

22   version of events.

23       After carefully reviewing the record, the undersigned finds that plaintiff's version of

24   events is not so blatantly contradicted by the record so that no reasonable jury could believe it.

25   See Scott v. Harris, 550 U.S. at 380 (at summary judgment, respondent's version of events was

26   "so utterly discredited by the record that no reasonable jury could have believed him.").  Rather,

27   the jury should evaluate the evidence and decide the credibility of the witnesses.  Anderson v.

28   Liberty Lobby, Inc., 477 U.S. at 255 (on summary judgment, the court cannot decide credibility).

1   Accordingly, the undersigned recommends that defendant Week's motion for summary judgment

2   as to plaintiff's excessive force claim be denied because whether defendant Weeks used excessive

3   force is disputed.

4        Finally, the undersigned addresses plaintiff's argument in his supplemental opposition that

5   defendant Weeks produced false evidence.  In his supplemental opposition, plaintiff argues that

6   defendant Weeks produced false discovery documents to plaintiff in response to request for

7   production of documents, set 1, request no. 1.  (ECF No. 298 at 6.)  Plaintiff appears to refer to a

8   form attached to the supplemental opposition titled "Report of Findings."  (Id. at 16.)  Plaintiff

9   contends that this form falsely states that Lieutenant Leckie interviewed inmate Munoz.  For the

10  following reasons, the undersigned finds that this argument is without merit.

11       The "Report of Findings" form states that, based on a review of the appeal, the incident

12  package and interview with plaintiff and Munoz, Lieutenant Simmerson could find no evidence to

13  support plaintiff's claim that staff battered plaintiff on March 1, 2013.  (Id.)  The form states that

14  Lieutenant Leckie interviewed plaintiff.  (Id.)  The form states, "The interview with inmate

15  Munoz supported the events that occurred on March 1, 2013."  (Id.)

16       Attached to plaintiff's supplemental opposition is the declaration of inmate Munoz.  (Id. at

17  40.)  Inmate Munoz states that he saw defendant Weeks beat plaintiff on March 1, 2013.  (Id.)

18  Inmate Munoz states that from March 1, 2013, to the present, no prison official ever asked him if

19  he witnessed any "incident of assault" on plaintiff on March 1, 2013.  (Id.)

20       In the reply, defendant Weeks states that in the summary judgment motion, defendant

21  referred to the previously filed declaration of Lieutenant Leckie.  (ECF Nos. 311 at 5, 240-4 at 3.)

22  In the declaration, Lieutenant Leckie stated that he interviewed plaintiff regarding the March 1,

23  2013 incident on March 2, 2013.  (ECF No. 155-4 at 1-2.)  Lieutenant Leckie did not state that he

24  interviewed inmate Munoz.  (Id.)  The undersigned also observes that the "Report of Findings"

25  attached to plaintiff's supplemental opposition does not state who interviewed inmate Munoz.

26  (ECF No. 298 at 16.)

27       The undersigned agrees with defendant Weeks that plaintiff's argument as to whether or

28  not inmate Munoz was interviewed in the investigation does not create a triable issue of material

70

1  fact for purposes of defendant Weeks' summary judgment motion.  At trial, plaintiff may

2  challenge the credibility of the "Report of Findings" with the testimony of inmate Munoz.

3        2.  Conspiracy

4        In the summary judgment motion, defendant Weeks incorrectly framed plaintiff's

5  conspiracy claim.  Defendant Weeks argues that he did not conspire with inmates Crane and

6  Parker.  (ECF No. 240-3 at 19-20.)  As discussed above, plaintiff's conspiracy claim is not based

7  on a conspiracy between defendant Weeks and inmates Crane and Parker.  Plaintiff alleges that

8  defendant Weeks conspired with the other defendants to violate plaintiff's constitutional rights.

9  Because defendant Weeks did not address the conspiracy claim raised in the second amended

10 complaint, defendant is not entitled to summary judgment as to this claim.

11     VII.     Objections

12        The issues in this action have been extensively briefed by both parties.  For that reason,

13 objections to these findings and recommendations shall be no longer than fifteen pages.

14        Accordingly, IT IS HEREBY ORDERED that plaintiff's motion to file a response to

15 defendant Weeks' challenge to inmate Boutte's declaration (ECF No. 306) is granted; and

16        IT IS HEREBY RECOMMENDED that:

17     1.  The motion for summary judgment on behalf of defendants Barton, etc. (ECF No.

18        236) be granted as to the following claims:  1) plaintiff's claims regarding the January

19        16, 2013 incident based on plaintiff's failure to exhaust administrative remedies

20        (including the related claim against defendant Davey); 2) plaintiff's claims against

21        defendant Robinette regarding the January 22, 2011 incident as without merit; and 3)

22        plaintiff's claims against defendant Davey regarding the March 1, 2013 incident as

23        without merit;

24     2.  The motion for summary judgment on behalf of defendants Barton, etc. (ECF No.

25        236) be denied in all other respects; and

26     3.  The motion for summary judgment on behalf of defendant Weeks (ECF No. 240) be

27        denied.

28     These findings and recommendations are submitted to the United States District Judge

                                          71

assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **thirty** days after

being served with these findings and recommendations, any party may file written objections with

the court and serve a copy on all parties.  Such a document should be captioned "Objections to

Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be

filed and served within fourteen days after service of the objections.  The parties are advised that

failure to file objections within the specified time may waive the right to appeal the District

Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  January 4, 2023

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Cran0208.msj(3)